465 F.2d 49
 Kenneth WOODALL, #B-1-103228, Appellant,
v.
John M. PETTIBONE, Director, Division of Parole and
Probation, Maryland Department of Public Safety
and Correctional Services, Appellee.
Kenneth WOODALL, #B-1-103228, Appellee,
v.
John M. PETTIBONE, Director, Division of Parole and
Probation, Maryland Department of Public Safety
and Correctional Services, Appellant.
 Nos. 72-1242, 72-1264.
 United States Court of Appeals,
 Fourth Circuit.
 Argued May 12, 1972.
Decided Aug. 8, 1972.
 
 Peter S. Smith, Baltimore, Md. (John E. Kratz, Jr., and Piper & Marbury, and Michael A. Millemann, Baltimore Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellant Kenneth Woodall.
 David H. Feldman, Asst. Atty. Gen. (Francis B. Burch, Atty. Gen. of Maryland, Edward F. Borgerding, Asst. Atty. Gen., Chief, Crim. Div., John P. Stafford, Jr., Asst. Atty. Gen. of Maryland, on brief), for appellee John M. Pettibone.
 Before BOREMAN, Senior Circuit Judge, CRAVEN, Circuit Judge, and BLATT, District Judge.
 CRAVEN, Circuit Judge:
 
 
 1
 The question presented by this appeal is whether Long v. Robinson, 436 F.2d 1116 (4th Cir. 1971), is to be given retroactive effect. We think that it should be applied retroactively but that practical considerations require case-by-case application and prevent according general blanket relief automatically to all persons affected.
 
 
 2
 In Long v. Robinson, 316 F.Supp. 22 (D.Md.1970), the district court held unconstitutional the Maryland laws[1] which required persons 16 and 17 years old who were arrested for crimes committed in Baltimore City to be tried as adults, when persons of the same age arrested for crimes committed anywhere else in Maryland would initially come within the jurisdiction of the juvenile courts.[2] This court affirmed the ruling of unconstitutionality on the opinion of the district court, Long, supra, 436 F.2d at 1118, but reserved the question of retroactivity, because, since Long was a class action, the proper class to whom it would apply would be those persons "whose convictions had not become final as of * * * May 15, 1969." Long, supra at 1120. Woodall, whose conviction for robbery with a deadly weapon became final before that date, raises the issue of retroactivity reserved in Long in his petition for habeas corpus.
 
 I.
 
 3
 In opposing his petition in the district court and on appeal, the State of Maryland urges that since Woodall has not applied for state post-conviction relief, his petition should be dismissed for failure to exhaust state court remedies. We think the district court properly rejected this defense. It is clear that the State of Maryland has accepted the reasoning of Long concerning the unconstitutionality of the laws in question, Greene v. State, 11 Md.App. 106, 273 A.2d 830 (1971), and has adopted the date of May 15, 1969, as the cut-off point for retroactivity. Franklin v. State, 264 Md. 62, 285 A.2d 616 (1972). That the question of retroactivity was not briefed and argued before the Maryland Court of Special Appeals and the Maryland Court of Appeals, the highest court of the state, does not convince us that the Maryland courts did not mean what they said. Whether or not they were specifically asked to decide the question of retroactivity, they have done so. Exhaustion does not require an exercise in futility. 28 U.S.C. Sec. 2254(b); Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964).
 
 II.
 
 4
 Since the Supreme Court first expressly approved the prospective application of constitutional decisions, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the basic factor considered in deciding whether to apply a decision retroactively has been the effect which the denial of rights or procedures subsequently ruled to be constitutionally mandated might have had on the accuracy of the guilt determining process in prior trials. This approach is summarized in Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971), as follows:
 
 
 5
 Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.
 
 
 6
 It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials. [Footnote omitted.[3]
 
 
 7
 Although the principle elucidated in Williams, supra, was distilled from cases dealing primarily with violations of the Bill of Rights, we think it is equally applicable to violations of the right to equal protection of the laws secured by the Fourteenth Amendment.
 
 
 8
 The decision in Long established that the equal protection of the laws was denied by the Maryland laws[4] which required that those persons 16 and 17 years old arrested for acts committed in Baltimore City be tried as adults in the Baltimore Criminal Court, when persons the same age arrested for acts anywhere else in Maryland would be first subject to the jurisdiction of the juvenile court system.[5] Long v. Robinson, 316 F.Supp. 22 (D.Md.1970). Even if it were found that a defendant had done the acts complained of, this court thought that laws which absolutely foreclosed to certain persons the advantages[6] of being treated as juveniles solely on the basis of the geographical location of the alleged acts created an unreasonable and irrational classification and were therefore unconstitutional.
 
 
 9
 We think the question of retroactivity is controlled by our decision in Kemplen v. State of Maryland, 428 F.2d 169 (4th Cir. 1970). It is true, as the state contends, that the unconstitutional treatment of petitioners does not relate to the accuracy of the fact finding function of the judicial process. But as we said in Kemplen, the normal waiver proceeding is a critical point in the criminal proceedings against a juvenile. It is "the only opportunity an accused has to plead the defense of his diminished responsibility as a juvenile." Kemplen, at 177. To deny juveniles in Baltimore the opportunity of such a defense and to allow it to all other juveniles in Maryland seems to us so fundamentally unfair as to impeach the validity of the "adult" proceedings[7] and render unreliable the guilty verdicts obtained in these proceedings. We hold, therefore, that Long v. Robinson, 436 F.2d 1116 (4th Cir. 1971), is to be retroactively applied.
 
 III.
 
 10
 In the briefs and at oral argument considerable stress was put by the state's attorney on the enormity of the burden on the state if we required it to discover every conviction which resulted from trials in which defendants in Woodall's position had been subjected to criminal sanctions and expunge them from the records. We impose no such burden on the state.[8]
 
 
 11
 Expunction is an equitable remedy to be granted in the balancing of the interests of the defendants and the state, see Wheeler v. Goodman, D.C., 306 F.Supp. 58 (1969), and we think that the only fair way to determine whether expunction is required is on a case-by-case method when the issue is raised by one affected by such a conviction. Unlike the situation in which it is determined that certain conduct is constitutionally immune from criminal sanctions, United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the conduct involved in convictions which Long voided was not so constitutionally protected. See p. 52 n. 7 supra. We think a court of equity, in considering a petition to expunge, should consider, inter alia, whether or not waiver to the adult criminal courts would likely have been granted. Always, of course, the extent and nature of the burden of the unconstitutional conviction should be considered.
 
 
 12
 The diligent efforts of Woodall's counsel aided by the state's attorney have disclosed that there are 37 persons under sentence of imprisonment to regular penal institutions, nine institutionalized in and one paroled from Patuxent Institution, 74 on parole and 39 on probation[9] who will be affected by this decision, the identities of all of whom are known.
 
 
 13
 As to these 122 persons, we hold that they are entitled to retroactive application of the rationale of Long. In granting relief, the district court will be faced with the same procedural problem encountered in Kemplen v. Maryland, supra. For its guidance in further proceedings, we suggest that the application of Long to the convictions of these persons in the adult criminal courts should be treated as establishing prima facie a right to have the convictions vacated and declared null and void, provided however, that the state should be afforded the opportunity, either in the Maryland courts or in the United States District Court, to establish nunc pro tunc that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court. See opinion on petition for rehearing, Kemplen, 428 F.2d at 178. Compare Franklin v. State, 264 Md. 62, 285 A.2d 616 (1972).
 
 
 14
 Reversed.
 
 
 
 [1]
 Md.Code, Art. 26 Secs. 51-71 (1957) exempted Baltimore City from the general statewide juvenile age limit of 18, and Art. 4 Sec. 240(b) of the Charter and Public Laws of Baltimore City fixed the juvenile age limit at 16
 
 
 [2]
 An exception to this general rule was that persons over 14 arrested for crimes which carried the death sentence or life imprisonment were to be tried as adults. Md.Code, Art. 26 Sec. 70-2(d) (1). Since this exception applied regardless of where the acts occurred, it does not influence this decision
 
 
 [3]
 Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), indicated that the retroactivity of newly formulated constitutional rules of criminal procedure was to be decided by weighing the purpose of the new rule, the extent of reliance on the old rules by law enforcement officials, and the effect that a retroactive application of the new rule would have on the administration of justice. We think the summarization in Williams, supra, more accurately reflects the fact that it is the accuracy of the truth finding process which is of paramount importance in decisions of retroactivity. See Williams, 401 U.S. at 652-656, 91 S.Ct. at 1152-1153, 28 L.Ed.2d at 394-396 n. 5 and 7, for a summary of constitutional decisions held retroactive or prospective in different areas of criminal law
 
 
 [4]
 See note 1, p. 50 supra
 
 
 [5]
 It is true that the juvenile court can, upon motion by the state, waive its jurisdiction to the adult criminal courts, Md. Code, Art. 26 Sec. 70-16(b) (1971 Cum. Supp.), but such a waiver can be granted only after a full due process hearing, Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970), and is not a perfunctory process. That the juvenile court might waive its jurisdiction in an appropriate case does not lessen the unfairness of the system to one who can never get the chance to be subjected first to the juvenile court's jurisdiction
 
 
 [6]
 Notwithstanding the observations of the district court upon the absence in juvenile proceedings of some procedures now considered constitutionally necessary in a criminal trial, Woodall v. Keller, 337 F.Supp. 595, 599 (D.Md.1972), the general advantages of being accorded juvenile treatment have been well documented. Kemplen v. Maryland, 428 F.2d at 173-74; Long v. Robinson, supra. Perhaps the greatest advantage in the long run is that provided by Md.Code, Art. 26 Sec. 61 (1957). "No adjudication by the judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication."
 
 
 [7]
 We do not think there would be an equal protection objection to treating all 16-year-old people as adults for purposes of criminal liability, nor would such treatment "shock the conscience." The constitutionally impermissible action is making criminal liability more likely for special groups without a rational reason. Thus, contrary to the opinion of the district court, Woodall v. Keller, 337 F.Supp. at 599, the right which Woodall claims is of constitutional dimensions-the right to the equal protection of the laws secured by the Fourteenth Amendment
 
 
 [8]
 The district court in Long v. Robinson, 316 F.Supp. at 31, did put the burden on the state to discover all of those people who would be entitled to the benefits of that decision
 
 
 [9]
 We have not included 20 people whose probation to the Municipal Court of Baltimore City will have expired, according to Woodall's counsel, by the time this decision takes effect. To the extent, however, that any terms of these probations are still in effect, our decision applies equally to them