Ellis Richard **DOUGLAS**, Jr.,
#107859

v.

**WARDEN, MARYLAND
PENITENTIARY.**

Civ. No. 70–915–K, Case C.

United States District Court,
D. Maryland.

June 5, 1975.

Benjamin Rosenberg, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen. of Md., John P. Stafford, Jr., Asst. Atty. Gen. of Md., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Douglas, presently confined in the Maryland House of Correction, seeks habeas corpus relief in this Court for the third time after two previous unsuccessful quests.[1] Douglas was convicted on February 19, 1969 of common law robbery after a jury trial in the Criminal Court of Baltimore, Judge Solomon Liss presiding. On March 3, 1969, Judge Liss denied Douglas' motion for a new trial and sentenced him to ten years' imprisonment.[2] The Court of Special Appeals of Maryland affirmed Douglas' conviction in an unreported per curiam opinion filed on March 9, 1970. Thereafter, the Court of Appeals of Maryland denied certiorari review on June 8, 1970. Douglas' search for post-conviction relief under the Maryland Post Conviction Procedure Act was denied on December 7, 1973 by Judge Anselm Sodaro, sitting in the Criminal Court of Baltimore. Application for leave to appeal Judge Sodaro's decision was also denied by the Court of Special Appeals of Maryland in an unreported per curiam opinion filed on January 10, 1974.

Douglas raises only one issue in this case.[3] That contention is that the State's use, for credibility impeachment purposes in its cross-examination of Douglas during the robbery trial before

1. Douglas' first unsuccessful petition for habeas corpus relief dealt with the same state court conviction he is presently attacking herein. *Douglas v. Maryland*, Civil No. 70–915–K, Case A (D.Md. June 28, 1972), *appeal dismissed*, No. 72–1895 (4th Cir. Jan. 15, 1973). Douglas' second unsuccessful petition for habeas corpus was related to a state court conviction other than and separate from the state court conviction involved in Case A and in the within proceeding. *Douglas v. Maryland*, Civil No. 70–915–K, Case B (D.Md. Dec. 21, 1972), *appeal dismissed*, No. 73–1167 (4th Cir. June 8, 1973). Douglas' fourth habeas corpus petition, dealing with the state conviction attacked in Civil No. 70–915–K, Case B, is pending in Civil No. K–74–1255 (D.Md., filed Nov. 14, 1974).

2. In another of Douglas' state convictions, the one considered by this Court in Civil No.

70–915–K, Case B, which occurred after the state court conviction he complains of in Case A and herein, Douglas was sentenced to a term of ten years to be served consecutively to the term imposed in connection with the first such state conviction he is presently serving.

3. Originally, Douglas also stated herein a second contention regarding alleged denial of counsel at a preliminary hearing. Subsequently, Douglas decided, and so instructed his present counsel appointed by this Court (who also served in a similar capacity in connection with Civil No. 70–915–K, Case A), to abandon that attack, with prejudice. This Court hereby expresses its appreciation to that counsel, Benjamin Rosenberg, Esq., for his most competent and diligent representation of Douglas.

Judge Liss, of a prior criminal conviction of Douglas which would have been void if it had occurred after the decision in *Long v. Robinson,* 316 F.Supp. 22 (D.Md.1970), *aff'd,* 436 F.2d 1116 (4th Cir. 1971), deprived Douglas of due process of law. That contention was rejected by Judge Sodaro in Douglas' post-conviction proceeding. That rejection was not disturbed in connection with Douglas' unsuccessful quest for appellate review. Accordingly, Douglas has exhausted his state remedies with respect to the single issue he raises in this case.

During the robbery trial before Judge Liss, Douglas was positively identified by two eyewitnesses as the man who had committed the robbery. There was no other evidence as to his guilt. Douglas took the stand in his own defense in an attempt to establish an alibi defense. On cross-examination the State elicited testimony from Douglas concerning his prior criminal record (T. Tr. 137–40). That record consisted of three offenses: (1) a conviction, within a year of the trial itself, for burglary;[4] (2) a conviction for burglary which occurred in 1959 when Douglas was sixteen years old; and (3) a larceny conviction for which Douglas was fined fifty dollars. The date of that third conviction is not clear.[5] When Douglas was asked about the conviction which took place when he was sixteen years old, he responded only by answering "juvenile" to questions about that conviction.

In *Long v. Robinson,* 316 F. Supp. 22 (D.Md.1970), then Chief Judge R. Dorsey Watkins of this Court held unconstitutional the Maryland statutory provisions[6] which provided that a person sixteen or seventeen years of age had to be tried in the Criminal Court of Baltimore as an adult whereas a person of the same age could only be tried in the Circuit Courts of the counties if the Juvenile Court of the county involved waived jurisdiction to the adult criminal court. Judge Watkins held that a sixteen or seventeen year old person had the same right to insist upon a Juvenile Court waiver, before he could be tried as an adult in Baltimore City, as such a person had with respect to trial in one of Maryland's counties.[7] Judge Watkins' decision was affirmed by the Fourth Circuit in *Long v. Robinson,* 436 F.2d 1116 (4th Cir. 1971), which, *inter alia,* held that there was not "a true retroactivity question" before it at that time. 436 F.2d *supra* at 1120. That retroactivity issue was subsequently considered in *Woodall v. Pettibone,* 465 F. 2d 49 (4th Cir. 1972), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973), decided on August 8, 1972.[8] In *Woodall,* Judge Craven wrote (at 50):

> The question presented by this appeal is whether *Long v. Robinson,* 436 F.2d 1116 (4th Cir. 1971), is to be given retroactive effect. We think that it should be applied retroactively but that practical considerations require case-by-case application and

---

4. That burglary conviction is apparently not the conviction which Douglas attacked in Civil No. 70–915–K, Case B.

5. Counsel for Douglas informed this Court in oral argument that that third conviction would also have been void under *Long v. Robinson* if it had occurred after the *Long* decision. The State has not in any way disputed that factual assertion.

6. 2B Md.Ann.Code art. 26, §§ 51–71 (1957).

7. *See* Md.Ann.Code, *Cts & Jud.Proc.* art. 3, § 3–816 (1974 Supp.) as to the present waiver provisions. Before a juvenile court may waive its jurisdiction, it must comply with due

process requirements, including the right to counsel. *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970).

8. The within petition in Civil No. 70–915–K, Case C pertains to, as indicated *supra* n. 1, the same state court conviction attacked in Civil No. 70–915–K, Case A. While *Long v. Robinson, supra,* had been decided before this Court's decision was filed in Case A, *Woodall v. Pettibone, supra,* was decided thereafter. Accordingly, no question of waiver by Douglas of his right to raise the issue posed herein would seem to be present; nor has the State raised any question of waiver.

prevent according general blanket relief automatically to all persons affected.

And (at 52):

We think the question of retroactivity is controlled by our decision in *Kemplen v. State of Maryland*, 428 F. 2d 169 (4th Cir. 1970). It is true, as the state contends, that the unconstitutional treatment of petitioners does not relate to the accuracy of the fact finding function of the judicial process. But as we said in *Kemplen,* the normal waiver proceeding is a critical point in the criminal proceedings against a juvenile. It is "the only opportunity an accused has to plead the defense of his diminished responsibility as a juvenile." *Kemplen,* at 177. To deny juveniles in Baltimore the opportunity of such a defense and to allow it to all other juveniles in Maryland seems to us so fundamentally unfair as to impeach the validity of the "adult" proceedings and render unreliable the guilty verdicts obtained in these proceedings. We hold, therefore, that *Long v. Robinson*, 436 F.2d 1116 (4th Cir. 1971), is to be retroactively applied.

\* \* \* \* \* \*

In the briefs and at oral argument considerable stress was put by the state's attorney on the enormity of the burden on the state if we required it to discover every conviction which resulted from trials in which defendants in Woodall's position had been subjected to criminal sanctions and expunge them from the records. We impose no such burden on the state.

Expunction is an equitable remedy to be granted in the balancing of the interests of the defendants and the state, see *Wheeler v. Goodman,* D.C., 306 F.Supp. 58 (1969), and we think that the only fair way to determine

whether expunction is required is on a case-by-case method when the issue is raised by one affected by such a conviction. Unlike the situation in which it is determined that certain conduct is constitutionally immune from criminal sanctions, *United States v. United States Coin and currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the conduct involved in convictions which *Long* voided was not so constitutionally protected. *See* p. 52 n. 7 *supra* [quoted *infra* at p. 9]. We think a court of equity, in considering a petition to expunge, should consider, *inter alia,* whether or not waiver to the adult criminal courts would likely have been granted. Always, of course, the extent and nature of the burden of the unconstitutional conviction should be considered.

The diligent efforts of Woodall's counsel aided by the state's attorney have disclosed that there are 37 persons under sentence of imprisonment to regular penal institutions, nine institutionalized in and one paroled from Patuxent Institution, 74 on parole and 39 on probation [9] who will be

9. We have not included 20 people whose probation to the Municipal Court of Baltimore City will have expired, according to Woodall's counsel, by the time this decision takes effect. To the extent, however, that any terms of these probations are still in effect, our decision applies equally to them.[9]

affected by this decision, the identities of all of whom are known.

As to these 122 persons, we hold that they are entitled to retroactive application of the rationale of *Long*. In granting relief, the district court will be faced with the same procedural problem encountered in *Kemplen v. Maryland, supra.* For its guidance in further proceedings, we suggest that the application of Long to the convictions of these persons in the adult

9. In *Franklin v. State*, 264 Md. 62, 285 A.2d 616 (1972), discussed and emphasized in *Woodall* (at 51), the Court of Appeals of Maryland held *Long* to be not retroactive. Further the Court of Special Appeals of Maryland has subsequently declined to follow *Woodall.* *Wiggins v. State,* 22 Md.App. 291, 324 A.2d 172 (1974), aff'd, Md., 344 A.2d 80 (1975).

criminal courts should be treated as establishing *prima facie* a right to have the convictions vacated and declared null and void, provided however, that the state should be afforded the opportunity, either in the Maryland courts or in the United States District Court to establish *nunc pro tunc* that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court. See opinion on petition for rehearing, *Kemplen*, 428 F.2d at 178. Compare *Franklin v. State*, 264 Md. 62, 285 A.2d 616 (1972). [All footnotes other than footnote 9 are omitted.]

In *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court held that a conviction obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963), *i. e.*, a conviction obtained in a proceeding in which the defendant had not been afforded counsel, could not be considered valid as a prior conviction with relation to a subsequent prosecution involving a Texas statutory recidivist provision. "To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense * * *," wrote Mr. Justice Douglas in *Burgett* (389 U.S. at 115, 88 S.Ct. at 262), "is to erode the principle of that case." *Gideon* itself has been held fully retroactive. *See, e. g., Kitchens v. Smith*, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). *Burgett* was held fully retroactive in *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), decided March 22, 1972, four and one-half months before *Woodall* was decided on August 8, 1972. In *Loper*, prior convictions seemingly invalid under *Gideon* had been used to impeach the credibility of the defendant. In his plurality opinion in *Loper*, Mr. Justice Stewart wrote (at 483, 92 S.Ct. at 1019):

Unless *Burgett* is to be forsaken, the conclusion is inescapable that the use of convictions constitutionally invalid under *Gideon v. Wainwright* to impeach a defendant's credibility deprives him of due process of law.[12]

12. In the circumstances of this case there is little room for a finding of harmless error, if, as appears on the record now before us, Loper was unrepresented by counsel and did not waive counsel at the time of the earlier convictions. [Citations omitted.]

\* \* \*

Counsel in this case, one of whom participated as counsel in *Woodall*, have informed this Court that, as far as they can ascertain, the specific retroactivity issue raised herein was not expressly considered in *Woodall*, even though in *Woodall* Judge Craven explicitly focused upon the burden placed upon the State by *Woodall*'s limited retroactive application of *Long*. *Woodall* at no point holds in so many words that that retroactive application may not be extended to persons other than those who are serving sentences, or who are on probation or parole, as a result of convictions before *Long* which after *Long* would have been invalid. But *Woodall* itself limited relief to 122 persons who were so affected and who were, under *Woodall* (at 53), held presumptively entitled to have their "convictions vacated and declared null and void, provided however, that the state should be afforded the opportunity, either in the Maryland courts or in the United States District Court, to establish *nunc pro tunc* that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court." Neither in a state Court nor in this Court has the State sought to establish that such waiver would have occurred in connection with Douglas' trials as an adult when he was under the age of eighteen. Rather, the State contends herein that *Woodall*'s retroactive application of *Long* should not be extended so as to provide a basis for relief herein and that even if *Long*'s retroactive applica-

tion is so extended herein the harmless error doctrine bars such relief for Douglas.

■■ The State's first such contention relates to the question of burden placed upon the State. It is clear, as Judge Harvey has so well explicated in *Lambert v. Maryland*, Civil No. H–74–404, decided March 7, 1975,[10] that it is constitutional error, pursuant to the combination of the doctrines of *Burgett*, *Loper* and *Long*, for a conviction which was entered after *Long* and which was invalid under *Long*, to be utilized to impeach the credibility of a defendant who takes the witness stand in his own defense. Since the effective date of *Long*, a Maryland prosecutor must bear the burden of checking to make certain that a prior conviction was obtained under circumstances when not only the defendant's rights under *Gideon*, but also under *Long*, were fully respected, before that prosecutor may utilize such prior conviction.[11] But herein Douglas claims the right to have his conviction in his *1969* robbery trial, held before *Long* was decided, set aside upon the basis that his 1969 conviction was unconstitutionally obtained by the use, for impeachment purposes during such 1969 trial, of prior convictions which were neither invalid when entered, nor when used for impeachment purposes during the 1969 trial, under pre-*Long* principles. Counsel have not informed this Court, nor does this Court know, how many persons are in the same position as Douglas, but they must be many if not legion in number. It is in that context that this Court addresses itself herein to the issue of retroactivity, *i. e.*, in the context of focusing herein upon the dates upon which the entry of judgment of conviction and the alleged wrongful use of impeachment testimony took place. In

*Lambert*, the use after *Long* of a judgment dated after *Long* was held constitutionally wrongful. In this case, Douglas seeks to have this Court declare that use of a judgment entered before *Long* in a trial held *before Long* entitles him to have held invalid a conviction obtained in such trial.

In *Loper*, Mr. Justice Stewart emphasized (405 U.S. at 484, 92 S.Ct. 1014) that a conviction of a defendant without counsel "lacked reliability" and that the *Gideon* principle goes "to 'the very integrity of the fact-finding process' in criminal trials * * *." In *Burgett*, Mr. Justice Douglas (389 U.S. at 115, 88 S.Ct. 258) characterized the use of convictions obtained in violation of *Gideon* as "inherently prejudicial" and that such prior convictions were "presumptively void".

In *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the defendant took the stand in his 1953 federal bank robbery trial before a jury and his credibility was impeached by the use of prior convictions obtained in proceedings in which he was not afforded counsel. Although *Gideon* was not decided until 1963, the District Court and the Ninth Circuit considered that use to be constitutional, albeit harmless, error insofar as the obtention of the 1953 conviction was concerned. However, because the prior convictions had been explicitly considered by the District Judge in connection with sentencing, the Ninth Circuit remanded for resentencing. The Supreme Court affirmed. In so doing, Mr. Justice Stewart wrote (at 447–48, 92 S.Ct. at 592):

We need not speculate about whether the outcome of the respondent's 1938 and 1946 prosecutions would nec-

---

10. A copy of that opinion has been placed in the official court file herein.

11. *See also United States v. Dorman*, 496 F. 2d 438, 441 (4th Cir. 1974); *Dameron v.*

*United States*, 488 F.2d 724 (5th Cir. 1974); *Brown v. United States*, 483 F.2d 116 (4th Cir. 1973).

essarily have been different if he had had the help of a lawyer.[5] * * *

[5] It is worth pointing out, however, that to make the contrary assumption, *i. e.*, that the prosecutions would have turned out exactly the same even if the respondent had had the assistance of counsel, would be to reject the reasoning upon which the *Gideon* decision was based:

"[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. . . . That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries." 372 U.S., at 344, 83 S.Ct. 792.

*Tucker* dealt with a situation in which counsel was not provided. That is not what is involved in this case. The trial of a defendant who is not afforded counsel is considerably more constitutionally suspect than a proceeding against a sixteen year old person as an adult which proceeding in and of itself in the absence of equal protection violations is not subject to constitutional challenge. *See Woodall v. Pettibone,* 465 F.2d *supra* at 52 n. 7, quoted *infra* at p. 9.

In *Beto v. Stacks,* 408 F.2d 313 (5th Cir. 1969), decided well before *Loper,* the question arose, as it did in *Burgett,* concerning the introduction into evidence of a conviction unconstitutionally obtained,[12] for purpose of enhancement of punishment rather than to attack a defendant's credibility. However, because the evidence of the previous conviction was made known to the jury before its determination as to guilt or innocence, Judge Goldberg held that the defendant had a right to have a completely new state court trial because of the "infectious influence" occasioned by "the use of a void conviction" upon the jury's said determination. 408 F.2d *supra* at 318. Judge Goldberg also (at 318) rejected the application upon the facts of *Stacks* of the *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), harmless error doctrine.

In *United States v. Penta,* 475 F.2d 92 (1st Cir. 1973), the defendant had been convicted of fraudulently possessing and transferring counterfeit Federal Reserve Notes after a federal jury trial in which his credibility was impeached by prior state convictions. Subsequently, those prior convictions were expunged in a state court post-conviction collateral proceeding because certain of the evidence introduced during such prior trial had been obtained as the result of an illegal search and seizure. Penta then moved for a new federal trial, claiming entitlement thereto because of the use at trial of those state court convictions for the purpose of impeachment of Penta's trial testimony. After Penta's motion was denied by the District Court, Penta appealed from that denial. In the course of affirming, and rejecting Penta's said contention, Chief Judge Coffin, after

12. In *Stacks,* Judge Goldberg wrote that such obtention occurred as follows (at 314–15):

In January, 1961, Stack [sic] was indicted once again for robbery by assault. This time appellee was indicted under Article 63 of the Texas Penal Code, and two prior convictions, instead of one, were used for enhancement purposes. In addition to the felony theft conviction, the new indictment charged Stack with a 1957 conviction for violation of the Federal Narcotics Act. At trial, both convictions were read to the jury and proved in evidence. Stack was then found guilty and the judge imposed the mandatory sentence of life imprisonment.

In February, 1967, appellee's conviction for violation of the Federal Narcotics Act was declared null and void by a federal district court under authority of *Elkins v. United States,* 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, and *Euziere v. United States,* 10 Cir. 1957, 249 F.2d 293. The conviction was set aside because narcotics introduced at appellee's trial had been unlawfully seized by state police officers in violation of appellee's Fourth Amendment rights. [Footnotes omitted.]

discussing the *Stacks* case, wrote (at 94):

In the light of subsequent developments involving the exclusionary rule and *Stacks'* omission of any discussion of *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), *see infra,* we feel compelled to examine anew the issue in *Stacks.* We agree that the use of evidence obtained from an unlawful search and seizure has a definite influence on the fact-finding process, but in a very different way from deprivation of counsel. Such evidence tends to make the resulting conviction more, not less trustworthy. There is no lack of reliability as there was in *Loper.*

And (at 95) Judge Coffin continued:

\* \* \* [A]ppellant has already received a remedy which is the most appropriate—his prior convictions were reversed. \* \* \*

13. In *United States v. Murray,* 492 F.2d 178, 196 (9th Cir. 1973), Judge Hamley, in the course of rejecting a claim of trial error, wrote:

We turn first to the contention that the 1954 and 1958 convictions were invalid because pleas of guilty were not voluntarily and intelligently given. In its plurality opinion in *Loper v. Beto, Corrections Director,* 405 U.S. 473, 480–483, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), the Supreme Court concluded that the use of convictions constitutionally invalid under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (deprived of assistance of counsel) to impeach a defendant's credibility deprives him of due process of law. We assume, for present purposes, that a deprivation of due process would similarly occur if the prior convictions were unconstitutionally invalid for any other reason, such as pleas of guilty which were not voluntarily and intelligently given. [Footnote omitted.]

In United States v. Cole, 463 F.2d 163, 170 (2d Cir.), *cert. denied,* 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972), the defendant had been convicted in a federal court trial in California prior to his trial and conviction in the Southern District of New York. After the New York trial, Cole successfully obtained in a *coram nobis* proceeding vacation of his California conviction. In his appeal from his New York conviction, Judge Friendly commented at 170):

Accordingly (at 96), Judge Coffin held:

\* \* \* We only go so far as to hold that a conviction which may have been influenced by the use, for general impeachment purposes, of prior convictions, which have been subsequently overturned on constitutional grounds relating to an illegal search or seizure may properly stand. .

In his concurring opinion Judge Aldrich commented (at 96–97):

\* \* \* [T]he reasons given by the [Supreme] Court for distinguishing *Gideon* from *Mapp* convince me that, with due respect to *Beto v. Stacks,* 5 Cir., 1969, 408 F.2d 313, the nature of the constitutional defect does make a difference in this kind of case. Basically the *Mapp* rule was of constitutional proportions because of its prophylactic importance, rather than because of its prejudicial effect on the defendant's trial. \* \* \* 13

Appellants challenge the denial on numerous grounds. They contend that but for the California conviction Cole might have taken the stand and also that since the Government had offered the California conviction in evidence, the vacating of this automatically entitles them to a new trial under *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L. Ed.2d 374 (1972), and *Beto v. Stacks,* 408 F.2d 313, 316 (5 Cir. 1969), which prohibit the use of a constitutionally defective conviction in a subsequent trial to destroy the general credibility of a testifying defendant, to support his guilt, or to enhance punishment.

\* \* \* \* \*

Rejecting that contention Judge Friendly concluded (at 171):

\* \* \* While *Loper* prevents the prosecution's use of a constitutionally defective conviction to impeach the defendant when the only defense "strategy" is to put the defendant on the witness stand, that decision also recognizes that when the defense elicits certain false or misleading statements from a defense witness which directly relate to a specific criminal proceeding, the prosecutor may then be permitted to counter by proof of a constitutionally defective conviction. \* \* \*

The cases decided to date provide guidelines, but not any applicable holdings, as to the issue before this Court herein. Turning back to that issue, this Court notes that the real flaw with pre-*Long* convictions is that they resulted from proceedings in which like defendants were treated as unlike, and not because any defendant was treated in a particularly improper manner. Thus, in *Woodall*, Judge Craven wrote (465 F.2d *supra* at 52 n. 7):

> We do not think there would be an equal protection objection to treating all 16-year-old people as adults for purposes of criminal liability, nor would such treatment "shock the conscience." The constitutionally impermissible action is making criminal liability more likely for special groups without a rational reason.

> \*   \*   \*   \*   \*   \*

Obviously then, convictions which offend *Long* differ considerably from those which offend *Gideon*. The latter are improper *per se,* while the former are improper only if and when other procedures are deemed to have been permitted to some, and denied to other, defendants who otherwise are alike. Accordingly, there is nothing inherently wrong with convictions which offend *Long*. On *their own* they do not violate any right of a defendant. In expressing those views this Court has not lost sight of Judge Craven's statement (at 52) in *Woodall* that "[t]o deny juveniles in Baltimore the opportunity of such a defense and to allow it to all other juveniles in Maryland seems to us so fundamentally unfair as to impeach the validity of the 'adult' proceedings and render unreliable the guilty verdicts obtained in these proceedings. \* \* \*" (Footnote omitted.) However, in so doing, Judge Craven was seemingly substantially tracking language which he had quoted earlier in *Woodall* (at 51) from *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), dealing with the tests to be applied in determining whether a constitu-

tional ruling should be given retroactive effect, and apparently was not considering the question of whether his ruling in *Woodall* should be given retroactive effect for purposes of voiding a later conviction obtained in a trial in which the earlier conviction, which under *Long*'s subsequently announced doctrine, was erroneously used for impeachment purposes. *See* the discussion herein *supra* at pp. 4–5.

Herein it is most important to consider the likelihood and the extent to which the course of Douglas' trial in the state robbery case herein involved was affected by the use of the earlier pre-*Long* convictions. And in that connection the degree to which Douglas was prejudiced in those earlier trials by being tried as an adult must be kept in mind. That there existed a strong possibility of such occurrence of prejudice has been emphasized by Judge Craven as follows in *Woodall* (at 52 n. 6):

> Notwithstanding the observations of the district court upon the absence in juvenile proceedings of some procedures now considered constitutionally necessary in a criminal trial, *Woodall v. Keller,* 337 F.Supp. 595, 599 (D. Md.1972), the general advantages of being accorded juvenile treatment have been well documented. *Kemplen v. Maryland,* 428 F.2d at 173–74; *Long v. Robinson, supra.* Perhaps the greatest advantage in the long run is that provided by Md.Code, Art. 26 § 61 (1957). "No adjudication by the judge upon the status of any child shall operate to impose any civil disabilities, nor shall any child be deemed a criminal by reason of such adjudication."

In that connection it is also to be noted that at the present time the Annotated Code of Maryland provides:

> The proceedings in the juvenile court regarding a child are not admissible as evidence against him in criminal proceedings, prior to conviction, unless the charge is perjury. (An.

Code 1957, art. 26, § 70–21; 1973, 1st Sp.Sess., ch. 2, § 1.)

Md.Ann.Code *Cts & Jud.Proc.* art. 3, § 3–834 (1974). In Maryland it is thus presently impermissible to attack a witness' credibility by asking him about his past record of juvenile offenses. *Westfall v. State,* 243 Md. 413, 423–24, 221 A. 2d 646 (1966). *Cf. Cook v. State,* 8 Md. App. 243, 259–60, 259 A.2d 326 (1969).

■ That brings this Court to the impact herein of the doctrine of harmless error as enunciated in *Chapman v. California,* 386 U.S. *supra* at 24, 87 S.Ct. 824.[14] In *Lambert v. Warden, supra,* in a federal habeas corpus proceeding, Lambert challenged his April 1972 non-jury conviction on the grounds that in a post-*Long* setting his credibility upon his cross-examination at trial was unconstitutionally impeached by convictions obtained in violation of *Long*'s holding. Relying largely upon his earlier holding in *Mayo v. Warden,* No. 70–1080 (D.Md.October 14, 1971), *aff'd,* No. 71–2080 (4th Cir. July 14, 1972), in which Mayo's complaint regarding his impeachment in a non-jury trial on cross-examination by the use of a prior

conviction invalid under *Gideon* was held on the facts of that case to be harmless error, Judge Harvey reached, on the facts of *Lambert,* that same conclusion.[15] However, the applicability of that decision in a non-jury case in this, a jury case, raises the factual question of the adverse effect, if any, which the use of Douglas' prior juvenile convictions had upon Douglas' credibility in the eyes of the jury which tried and convicted him.[16] The answer might well be that that extent, if any, must have been negligible in view of the fact that Douglas' credibility was impeached, not only by invalid-under-*Long* approximately 10-year-old juvenile convictions for larceny and burglary, but also impeached by a valid burglary conviction within the very year of his trial; in view of the very strong identification evidence against Douglas (T. Tr. 32–33, 50, 53–55, 63, 69, 72) by two tellers from the bank which had been robbed; and in view of the weakness of Douglas' alibi defense. On balance, the scales might well tip in favor of the State. But the resolution of that harmless error issue is a close one in this case which involves consideration of harmless error in a state jury trial[17]

---

14. In *Lambert* (at p. 7), Judge Harvey wrote of *Chapman* that the opinion therein "articulated the test in two ways: (1) Is there a reasonable possibility that the evidence complained of might have contributed to the conviction, and (2) Did the constitutional error, beyond a reasonable doubt, not contribute to the verdict obtained? 386 U.S. at 24, 87 S.Ct. 824."

15. A copy of Judge Harvey's opinion in *Mayo* has been placed in the official court file herein.

16. In his instructions to the jury in Douglas' robbery trial, Judge Liss stated (T. Tr. 179):

    * * * But, let me say this to you: reference has been made in this case about the prior criminal record of the defendant. Let me make it clear to you that you may consider the prior criminal record of the defendant not for the purposes of determining guilt or innocence, but for the purposes of determining credibility. In other words, you may consider his testimony, and in determining the credibility of that testimony, you may also consider that

this defendant has been previously convicted of a crime.

    You should not, however, decide this case in your final decision as to guilt or innocence on the fact that the defendant has a prior criminal record.

That cautionary instruction, if it had related to properly admitted prior conviction testimony, was of course totally correct. However, that instruction did not tell the jury to ignore the impeaching effect of testimony concerning convictions. While there was no reason at the time of Douglas' robbery trial for Judge Liss so further to instruct the jury, nevertheless, from the hindsight view of *Long* and *Woodall,* such an instruction was needed. The question presented herein can therefore not be deemed to have been eliminated or even affected by Judge Liss' jury instructions.

17. This Court does not in any way ignore the fact that the *Chapman* doctrine has been applied in jury cases, but simply notes that such applicability may often become more difficult than in a non-jury case.

—and is one which this Court need not and does not make in view of its determination as to the question of retroactivity. For on balance, that retroactivity issue, as thorny as it is, must in this Court's opinion be resolved in the State's favor. First of all, Douglas was not afforded a trial under inherently invalid conditions. Second, if Douglas is given the retroactive benefit he seeks herein, *Long*'s application will be seemingly extended to many more persons than the 122 persons referred to by Judge Craven in *Woodall* (at 53). Accordingly, the State's burden will be rather considerably increased, a result which in and of itself is not controlling, but which still must not be lost sight of. In *Desist v. United States*, 394 U.S. 244, 248–49, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969), Mr. Justice Stewart wrote:

Ever since *Linkletter v. Walker*, 381 U.S. 618, 629 [85 S.Ct. 1731, 1037, 14 L.Ed. 601], established that "the Constitution neither prohibits nor requires retrospective effect" for decisions expounding new constitutional rules affecting criminal trials, the Court has viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations. As we most recently summarized them in Stovall v. Denno, 388 U.S. 293, 297 [87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199], "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

Foremost among these factors is the purpose to be served by the new constitutional rule. This criterion strongly supports prospectivity for a decision amplifying the evidentiary exclusionary rule. * * * [Footnotes omitted.]

And (at 251, 89 S.Ct. at 1035):

* * * It is to be noted also that we have relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity. * * * [Footnote omitted.]

The question in issue here deals with the use of pre-*Long* convictions for impeachment purposes and not with the validity of those convictions themselves, and thus may appropriately be classified with those retroactivity cases "bearing on the use of evidence or on a particular mode of trial", *Robinson v. Neil*, 409 U.S. 505, 508, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973); *see also Desist v. United States, supra,* and *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), as opposed, for example, to a double jeopardy type of constitutional violation considered in *Robinson.* In *Robinson, Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), and its particular double jeopardy holding, was held retroactive. Further, if Douglas and every person like him can gain the relief sought herein, it will seemingly be necessary, under *Woodall,* which (at 53) followed *Kemplen*'s approach, to give the State of Maryland the opportunity to establish whether "the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court." The Fourth Circuit, in *Woodall,* subjected the State of Maryland to that burden in connection with 122 persons held in custody, or on probation or parole, as a result of pre-*Long* convictions. That burden was imposed because of the essential unfairness otherwise occasioned to persons whose liberty was restrained solely because of pre-*Long* convictions. As to Douglas, the current restraint upon his liberty cannot be ascribed solely to Douglas' pre-*Long* convictions, but rather to a conviction for another offense obtained

in a jury trial presided over by Judge Liss which in and of itself was conducted with respect for principles of fundamental fairness.

In sum, on balance, this Court concludes that Douglas must be denied the habeas corpus relief he seeks in this case.