Andrew ALEXANDER, a/k/a Walter
Bruce, Appellee,

v.

STATE OF MARYLAND; Department of
Public Safety and Correctional Services,
S. Bosley, Acting Commander, Appel-
lants.

No. 82–6213.

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1983.

Decided Oct. 20, 1983.

Philip M. Andrews, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Maryland, Baltimore, Md., on brief), for appellants.

Deborah L. Robinson, Baltimore, Md. (Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellee.

Before RUSSELL, PHILLIPS and MURNAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Claiming that in 1961 he was unconstitutionally convicted by the State of Maryland as an adult when he was a juvenile, Andrew Alexander sought by federal habeas corpus petition to defeat Maryland's effort by detainer to secure his custody from federal authorities to force completion of his state sentence under the challenged conviction. The district court granted habeas relief as prayed. Finding no error on Maryland's appeal, we affirm.

## I

Alexander was convicted by bench trial in the Criminal Court of Baltimore City in 1961 of three felony counts concerning actual and attempted armed robbery. All three offenses involved the use of a handgun and Alexander had at least one partner in each escapade. Alexander was sentenced to a minimum term of twenty years' incarceration, a portion of which has not yet been served.[1]

Alexander was 17 years of age at the time of his arrest and subsequent conviction in 1961. At that time, general Maryland law[2] provided that individuals under 18 years of age were considered juveniles for purposes of criminal prosecution. Juvenile defendants were remanded to the Juvenile Court for disposition of their cases. The Juvenile Court could waive jurisdiction over the juvenile and return him to the regular courts for trial as an adult. This waiver was in the absolute discretion of the Juvenile Court in 1961.

This law was not in force statewide, however. The statute specifically exempted the City of Baltimore, and the local public law of the City of Baltimore provided that only individuals under the age of *16* were subject to juvenile jurisdiction in Baltimore. These under-16 Baltimore juveniles could also be waived to the adult court in the absolute discretion of the juvenile court. Alexander, being 17 at the time of his indictment in Baltimore, was denied the opportunity to have a juvenile waiver hearing; rather, he was tried and convicted as an adult under the original jurisdiction of the regular criminal courts.

In 1971, this court held that these differing age-standards for application of juvenile jurisdiction violated the equal protection clause of the fourteenth amendment. *Long v. Robinson,* 316 F.Supp. 22 (D.Md. 1970), *aff'd,* 436 F.2d 1116 (4th Cir.1971). One year later, in 1972, this court held in

---

1. Alexander apparently did not take a direct appeal from these convictions. He did initiate post-conviction proceedings in 1964 but the records of those proceedings are unavailable.

2. Md.Code, Art. 26 §§ 51–71 (1957). The statute specifically exempted Baltimore from coverage.

*Woodall v. Pettibone,* 465 F.2d 49 (4th Cir. 1972), that the *Long* decision was to be given retroactive application and that all 16 and 17 year old persons convicted in Baltimore without the benefit of a juvenile waiver hearing were *prima facie* entitled to have the convictions vacated:

> As to these 122 persons, we hold that they are entitled to retroactive application of the rationale of *Long.* In granting relief, the district court will be faced with the same procedural problem encountered in *Kemplen v. Maryland, supra* [428 F.2d 169 (4th Cir.1970)]. For its guidance in further proceedings, we suggest that the application of *Long* to the convictions of these persons in the adult criminal courts should be treated as establishing prima facie a right to have the convictions vacated and declared null and void, provided, however, that the state should be afforded the opportunity, either in the Maryland courts or in the United States District Court, to establish nunc pro tunc that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court.

*Woodall,* 465 F.2d at 53.

Therefore, in 1972, Alexander could have petitioned under *Long* and *Woodall* for habeas relief from the state convictions.[3] Alexander did not avail himself of this opportunity in 1972, however, because at the time he had escaped from prison and was a fugitive. This was not an isolated episode. After being incarcerated in 1961, he had escaped in 1968 and remained at large until 1973. After being captured and convicted of that escape, Alexander escaped again in 1976 and was subsequently recaptured in the District of Columbia where he was convicted of burglary.[4]

Alexander was then sentenced to six years in a federal penal facility for the burglary conviction. At the time he had not completed the sentences imposed by the Maryland courts, so the state in 1979 filed a detainer with the federal authorities to require that Alexander be discharged into state custody upon completion of his federal sentence. In 1980, Alexander filed this habeas corpus petition to challenge the detainer, claiming that his state convictions should be vacated under *Long* and *Woodall.*

The district court, after extended factual inquiry, granted relief to Alexander on the theory announced in *Woodall.* The court also held that Alexander was not barred from seeking relief under Habeas Rule 9 because, although the petition was filed almost twenty years after the state convictions, the state did not suffer any prejudice directly traceable to Alexander's delayed filing. The district court vacated the detainer filed by the state. Alexander subsequently completed his federal sentence and was conditionally released on his personal recognizance while this appeal by Maryland is pending.

### II

Maryland attacks the order of the district court on two grounds: it claims that the court's finding that Alexander was entitled to habeas relief was erroneous; and it claims that the court's refusal to dismiss the petition under Habeas Rule 9(a) was an abuse of discretion. We address these claims separately.

### A

Under circuit law as declared in *Long* and *Woodall,* persons convicted in state court as was Alexander have a *prima facie* right to have their convictions vacated and declared

---

**3.** Although *Woodall* indicates that a habeas petitioner had a *prima facie* right to relief in either state or federal court, Alexander's only choice was to proceed in federal court. Maryland has declined to follow fully the retroactivity of relief declared in *Woodall,* and has adhered to May 15, 1969 as the proper cut-off date for application of the *Long v. Robinson* mandate. *Franklin v. State,* 264 Md. 62, 285 A.2d 616 (1972); *Wiggins v. State,* 275 Md.

689, 344 A.2d 80 (1975). Maryland's position on this is sufficient grounds for finding Alexander to have exhausted his state remedies.

**4.** Alexander was also convicted for this 1976 escape but the conviction was reversed in the Maryland appellate court and the charge was then dismissed.

null and void. The state can defeat this right only by "establish[ing] *nunc pro tunc* that the Maryland Juvenile Court Judge would have, because of the facts and circumstances, waived jurisdiction to an adult court." *Woodall,* 465 F.2d at 53. The dispute here concerns the application of this standard to the unique circumstances of Alexander's case.

*Woodall* imposes a difficult proof burden on the state seeking to defeat a *prima facie* claim such as Alexander's. The burden is to prove that the Baltimore juvenile court actually *would* have waived jurisdiction over the petitioner had a waiver hearing been held. A habeas court, in determining *nunc pro tunc* what the Baltimore court would have done in 1961, engages perforce in a highly speculative historical inquiry. Our standard in reviewing the district court's decision on this wholly dispositive factual issue is the normal one: we must not reject its factual finding unless it is clearly erroneous. Fed.R.Civ.P. 52(a).

Maryland has made a valiant attempt to meet its burden. The state presented evidence of Alexander's impoverished and unhappy home life, of his lack of education and somewhat low intelligence, and of his involvement with the juvenile authorities prior to his armed robbery arrests. Alexander had been adjudged a delinquent in 1957 for being a chronic truant; he was adjudged to be a delinquent again in 1958 for participating in the malicious destruction of some car windows. After serving 30 days at a juvenile reformatory, Alexander was placed on probation, from which he was released in 1959 after receiving one reprimand for a minor violation of the probation terms.

As further evidence that a waiver would have occurred, Maryland points to the nature of the crimes involved. All three robberies involved the use of a handgun in robbing commercial retail establishments, and Alexander admitted to being the gunman in one of the robberies. The state also stresses that one of Alexander's co-defendants who was under 16 received a waiver hearing and juvenile jurisdiction was waived in that case.

Finally, Maryland submitted a letter from a judge of the Supreme Bench of Baltimore who had been apprised of the facts of this case and asked to submit an opinion on the waiver issue. This judge analyzed the case under the current waiver statute, Cts. and Jud.Proc. § 3–817(d), which prescribes a five-factor inquiry,[5] and opined that he would waive jurisdiction over this case under present standards.

In opposition, Alexander presented the statistical records of the Baltimore juvenile court for the year 1961: during that year, only 33 cases out of a total 3,632—less than one percent—were waived by the juvenile court. These statistics were not categorized by the type of crimes involved, so it is impossible to determine what percentage of armed robbery cases were waived. Alexander also submitted a letter from a judge of the Supreme Bench of Baltimore. This judge concluded that, on the facts of this case, he would not have waived jurisdiction over Alexander in 1961.[6]

■ The district judge was confronted with contradictory evidence that essentially placed the narrow, dispositive factual issue in equipoise. He was aware of Alexander's personal situation and prior involvement

---

5. Cts. and Jud.Proc. § 3–817(d) states that the court shall consider the following factors in deciding whether to waive juvenile jurisdiction:
    (1) Age of the child;
    (2) Mental and physical condition of the child;
    (3) The child's amenability to treatment in any institution, facility, or program available to delinquents;
    (4) The nature of the offense and the child's alleged participation in it; and
    (5) The public safety.

6. Maryland claims that Alexander's expert had a less complete record on Alexander and that his opinion is therefore entitled to less weight than the state's expert. This, of course, is a matter of weight and credibility to be determined by the district court, which we assume was presented with this claim. For the state to prevail here we would have to credit its expert fully while fully discrediting Alexander's and on that basis declare the district court's finding clearly erroneous. We decline to do so.

with the juvenile authorities; he had the considered opposing opinions of two expert witnesses, one applying the current waiver standard and one applying the 1961 standard; he knew that less than one percent of all cases were waived by the juvenile court in 1961. Faced with this evidence, the court determined that the state had not shown that a waiver *would* have occurred in this case. The record demonstrates that this finding is not clearly erroneous.

Aside from the actual decision on the merits, Maryland faults the district court for not stating clearly the standard it was applying in making its *nunc pro tunc* determination. The district court clearly stated, however, that it was applying the scheme set out in *Woodall.*

The state further objects to the court's refusal to apply the current Maryland waiver standard enacted in 1969. Maryland claims that the district court was required explicitly to analyze the facts under the five-factor test that currently binds state courts in ruling on the waiver issue.[7]

■ We cannot agree with the state's claim. Under *Woodall,* the district court's factual inquiry is directed to what the juvenile judge would have done in 1961. At that time the issue of waiver was given by statute to the absolute discretion of the court. The five-factor test did not then exist. A juvenile court in 1961 certainly might have considered the factors and a district court could properly do the same today. But an express consideration of these factors was not required in 1961, and

it would be wholly improper to require it of the federal district courts now.

We further decline to take the occasion to instruct the district courts on the appropriate way to conduct the *nunc pro tunc* investigation mandated by *Woodall,* a course also urged by the state. This case indicates that no such guidance is needed. All those involved in the disposition of this case revealed a complete grasp of the necessities and available means of proof. *Long* and *Woodall* in combination require that district courts make a principled but essentially *ad hoc* factual determination concerning what *would* have happened many years ago had a judicial decision been forced. We perceive no need to attempt construction of general guidelines for that concededly difficult fact-finding endeavor.

### B

Maryland also contends that the district court abused its discretion in refusing to dismiss the petition under Habeas Rule 9(a). Rule 9(a) provides that petitions can be dismissed for delay prejudicial to the state unless the petitioner demonstrates that he could not have avoided the delay by the exercise of reasonable diligence "before the circumstances prejudicial to the state occurred."[8]

■ Rule 9(a) is not a statute of limitations; it merely embodies the equitable doctrine of laches. Habeas Rule 9(a) advisory

---

7. Maryland claims that post-*Woodall* developments in the state's case law on waiver mandate that the federal courts apply the current five-factor standard. The state relies on *Wiggins v. State,* 275 Md. 689, 344 A.2d 80 (1975), where the Court of Appeals stated that, while judges had no statutory guidelines to channel their discretion prior to Cts. and Jud.Proc. § 3–817(d), "it is presumed . . . that in exercising their discretion, factors such as these [contained in § 3–817(d) ] were considered by juvenile judges." 275 Md. at 698, 344 A.2d at 85. While we agree with the court's factual observation that juvenile judges probably considered factors like those contained in § 3–817(d), we do not agree with the state that federal courts are *required* to apply the new standard in mak-

ing the *nunc pro tunc* determination. The juvenile court in 1961 had absolute discretion in considering waiver; the federal district court's inquiry goes to how the juvenile judge would have exercised his discretion.

8. *Rule 9. Delayed or Successive Petitions*
      (a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

committee note; *Honeycutt v. Ward,* 612 F.2d 36 (2d Cir.1979). The mere passage of time is therefore not sufficient grounds to dismiss a petition under Rule 9(a); the state must make a particularized showing of prejudice to its ability to respond that arises from the petitioner's undue delay in filing. *McDonnell v. Estelle,* 666 F.2d 246 (5th Cir. 1982); *Paprskar v. Estelle,* 612 F.2d 1003 (5th Cir.1980). And because of its potentially devastating effect on the availability of habeas corpus, Rule 9(a) "must be carefully considered and liberally construed." *Davis v. Adult Parole Authority,* 610 F.2d 410, 413 (6th Cir.1979); *see also McDonnell,* 666 F.2d at 250–51.

Maryland was undoubtedly prejudiced in its ability to respond to Alexander's petition by passage of the total period of time between the state convictions and the filing of the petition—a period of almost twenty years. The juvenile judge who presided in 1961 had died in the 1960s, and the transcripts of Alexander's criminal trial and other court records were unavailable. These items and witnesses would have been of potential use to Maryland in trying to carry its burden under *Woodall.* Habeas petitions have frequently been dismissed because of prejudice resulting from the disappearance of such evidence during periods of delay chargeable to petitioners. *E.g., Honeycutt v. Ward,* 612 F.2d at 36 (15-year delay to challenge a 30-year old conviction; transcripts, trial counsel and trial judge all unavailable); *Bouchillon v. Estelle,* 628 F.2d 926 (5th Cir.1980) (27-year delay in challenging conviction; transcripts, counsel and trial judge unavailable); *Brim v. Solem,* 693 F.2d 44 (8th Cir.1982) (21-year delay; transcripts and trial judge unavailable); *Arnold v. Marshall,* 657 F.2d 83 (6th Cir.1981) (27-year delay; trial judge deceased, defense counsel's records unavailable).

But the proper inquiry in all of these cases, and in the instant case, is whether the state was prejudiced due to unreasonable delay on the part of the *petitioner* in filing his petition. The only period of delay properly chargeable to the petitioner within the total twenty-year lag is the period from 1972—when *Woodall* was decided—to the date in 1980 when the instant petition was filed. *See McDonnell v. Estelle,* 666 F.2d 246 (5th Cir.1982) (petitioner convicted in 1947 without assistance of counsel; petitioner could not have been aware of right to counsel until *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), so delay from 1947–1963 is excused); *Marks v. Estelle,* 691 F.2d 730 (5th Cir.1982) (petitioner convicted of misdemeanor in 1964–65 without assistance of counsel; right to counsel in misdemeanor cases was not announced until 1972, so delay from 1964–1972 is excused).

■ The state has failed to demonstrate any specific prejudice from the eight-year delay chargeable to Alexander other than the prejudice inherent in even the briefest passage of time. The only events specifically shown to be potentially prejudicial to Maryland by reason of time lapse occurred before the 1972 decision in *Woodall:* the presiding juvenile judge died even before the *Long v. Robinson* decision, and the transcripts and records of Alexander's trial were apparently destroyed in 1971.[9] Maryland has the same ability to respond to Alexander's habeas petition now as it did on the day *Woodall* was decided. By the latter

---

**9.** We were informed at oral argument that the criminal courts in Baltimore maintained their records for 10 years before disposing of them. If so, Alexander's records would have been destroyed in 1971, prior to *Woodall.* While we are not certain of the date of destruction of the records, we think it incumbent on the state in this case to show that it was prejudiced by the disappearance of the records in a period of delay chargeable to Alexander. Because there is a ten-year period of delay here not chargea-ble to Alexander, the state in demonstrating prejudice must show more than that the records are unavailable. *See McDonnell v. Estelle,* 666 F.2d 246, 253 (5th Cir.1982) (period of delay from 1947–1963 excused because of intervening legal developments; to demonstrate prejudice, the state must prove that records would have been available if petitioner had filed for habeas relief within a reasonable time after 1963).

date—which marks the onset of any period of delay chargeable to Alexander—the prejudice now pointed to was already present. We cannot therefore conclude that the district court abused its discretion in refusing to dismiss this petition under Rule 9(a).[10]

### III

This is a hard case whose result can only be justified on the basis that it is compelled by scrupulous adherence to the law of this circuit and to fundamental principles respecting trial court fact findings and appellate review of those findings. A United States District Judge has faithfully applied controlling circuit law to a dispositive factual finding made under the gravest difficulties in assessing wholly circumstantial evidence directed at reconstructing the probable result of a nonexistent state court judicial determination that, if made, would have been made over twenty years ago. His finding of fact—on carefully and creatively marshalled conflicting evidence that left the issue in essential equipoise—is not clearly erroneous under the standard of review we apply. His application of controlling law to that factual finding is unassailable. In consequence, the resulting judgment must be affirmed.

AFFIRMED.

---

**10.** We recognize that much of the state's difficulty of proof was occasioned by the fact that *Woodall* was decided 10 years after Alexander's state convictions. To permit the state to claim prejudice from events arising before 1972, however, would emasculate the command of *Woodall*. We also recognize that the lapse of time makes the state's ability to retry Alexander for the 1961 crimes highly problematic; but consideration of this factor is improper in ruling on a Rule 9(a) motion. *Aiken v. Spalding*, 684 F.2d 632 (9th Cir.1982).