**UNITED STATES of America**

v.

**Shawn W. HARRIS.**

**Case No. 03–1767M.**

United States District Court,
D. Maryland.

March 21, 2012.

---

Hollis Raphael Weisman, Office of the U.S. Attorney, Greenbelt, MD, for Plaintiff.

*OPINION AND ORDER OF COURT*

VICTOR H. LAWS, III, United States Magistrate Judge.

This motion to expunge a federal misdemeanor conviction requires the Court to answer a key question of federal court jurisdiction: Does federal "ancillary jurisdiction" extend to a claim for expungement of a criminal conviction—not on grounds of any illegality of the arrest or conviction, or any constitutional infirmity of the statute on which the Defendant was convicted—but solely on equitable grounds? The federal Circuits are split on this issue, and even within this District the decisions, taken as a whole, are ambiguous on the point. Because I conclude, for the reasons set forth below, that jurisdiction to order expungement on purely equitable grounds is lacking, the Defendant's motion will be denied.[1]

I.

On January 14, 2004, the Defendant, Shawn W. Harris, pled guilty to a single count of possession of a controlled substance in violation of 21 U.S.C. § 844. The offense took place on May 23, 2003, when the Defendant drove onto the property of the National Naval Medical Center, a fed-

1. A magistrate judge has the authority to hear and decide a request for expungement in a case where that same magistrate judge heard and determined all prior proceedings in a misdemeanor case upon consent of the Defendant. *United States v. Steelwright,* 179 F.Supp.2d 567, 569–72 (D.Md.2002).

eral reservation in Bethesda, Maryland. A plastic bag underneath the driver's seat contained a number of smaller bags of cocaine with a total weight of 32.29 grams. Following the guilty plea, on January 26, 2004, the Defendant was sentenced to two years of supervised probation and a $1,000 fine, among other conditions. Defendant complied with all conditions of his probation and completed his probationary term without incident.

On September 27, 2011, Defendant wrote a letter to the Court seeking to have his federal misdemeanor record expunged. The Defendant maintained that the cocaine conviction had served as a wake-up call, that he had turned his life around, and that he was now "the sort of person the expungement process was designed for". In a letter dated October 5, 2011, Defendant wrote to the Court again, amplifying his claim for expungement. In his second letter Defendant asked for the Court's "forgiveness and consideration of how I have conducted myself as an upstanding citizen and quality person to this day". He included some details concerning his work history and indicated that he had run into problems obtaining a security clearance in connection with certain federal employment. He attached some photographs and a resume detailing his work experience, education and skills.

Treating Defendant's letters as a motion for expungement, this Court then asked for, and received, briefs from both the U.S. Attorney's Office and the Federal Public Defender's Office (which had represented Defendant originally) on the expungement question. The memorandum from the Assistant Federal Public Defender maintained that, to properly evaluate the Defendant's request, the Court should hold a hearing and receive evidence as to the adverse consequences suffered by the Defendant as a result of his drug conviction. Accordingly, an evidentiary hearing on the

Defendant's motion for expungement was held on March 9, 2012.

The key factual issue to be determined is the nature and extent of the impact of the Defendant's drug conviction on his job opportunities and specifically the impact thereof on his ability to obtain a work-related security clearance. The Court finds as follows: In addition to maintaining his own self-employed tax preparation business, since college graduation Defendant has worked as a contract employee for two federal agencies (HHS and the Department of Agriculture) and also at least three private employers (General Dynamics, U1st Accounting Service, and most recently Nobilis where he is involved in managing a large government contract involving deployment of a satellite). Despite his 2004 criminal conviction, Defendant appears to have maintained continuous employment.

The evidence as to the impact of the criminal conviction on Defendant's ability to obtain a security clearance is murkier. Defendant testified that he is unable to obtain a top-secret security clearance and that the lack of such a clearance poses problems for his career advancement—preventing him from certain work regarding international contracts at USDA, imperiling his work on the satellite contract with Nobilis, and preventing him from taking a position with the Agency for International Development (USAID) which was contingent on obtaining a security clearance. Where I find the evidence murky is in the Defendant's testimony about the "glass ceiling" that he feels he is bumping up against by not having the security clearance, his comments that he must constantly "dumb down his resume", and that he is "90% sure" that he will be unable to continue working on the satellite project without obtaining the clearance. Such testimony leaves the Court unsure whether

Defendant has ever applied for a security clearance, much less has been denied or has exhausted any appeals, or whether Defendant has been "pulling his punches" throughout his career, opting not to apply for the clearance in the knowledge that his drug conviction must be disclosed. On balance, I find it more probable than not that the Defendant has been unable and will be unable for the foreseeable future to obtain a security clearance and that this represents a significant impediment to the Defendant's ability to undertake or complete specific projects required by current and prospective employers, thus detrimentally impacting his career prospects.

## II.

■ There is no applicable statute providing for expungement in a case like this.[2] While such a statute would confer federal question jurisdiction over this matter, in the absence thereof the only available jurisdictional basis is ancillary jurisdiction. Federal courts are courts of limited jurisdiction, and can only exercise the authority conferred by the Constitution or by statute. Federal jurisdiction "is not to be expanded by judicial decree". *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ Ancillary jurisdiction, or as it is sometimes called, "ancillary enforcement jurisdiction," is the concept under which federal courts maintain jurisdiction over related proceedings that are technically separate from the claims or causes of action in the initial case that invoked federal subject matter jurisdiction. As explained in the leading treatise on federal practice and procedure:

Under this concept, a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal. As the Court said in 1994, ancillary jurisdiction of this type is necessary "to enable a court to function successfully, that is, to manage its proceeding, vindicate its authority, and effectuate its decrees".

13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper and Richard D. Freer, FEDERAL PRACTICE AND PROCEDURE, § 3523.2 at 213 (3d Ed. 2008) (footnote omitted).

Typical examples of such ancillary jurisdiction are the power reserved to the court to enjoin actions that would interfere with the court's orders, to enter restraining orders to preserve the status quo while claims are adjudicated, to enjoin actions elsewhere, to impose sanctions, and to order garnishment or other incidental proceeding. *Id.*, § 3523.2 at 214–17.

With respect to expungement, the treatise continues:

One interesting issue is whether a district court that heard a criminal matter may exercise ancillary jurisdiction to entertain proceedings to expunge the criminal record. In limited circumstance, federal law expressly permits expungement, so ancillary jurisdiction is not necessary. When there is no such federal law, however, the courts clearly have ancillary jurisdiction to expunge records of unlawful convictions or arrests.

The courts disagree, however, on whether there is ancillary jurisdiction to entertain a proceeding to expunge based solely upon equitable considerations.

---

**2.** One federal statute that does provide for expungement under certain circumstances, 18 U.S.C. § 3607(c) (expungement for certain first-time drug offenders who are less than 21 years old at the time of the offense), does not apply here. The Defendant was 23 at the time of the drug offense.

For example, suppose a criminal defendant is acquitted at trial. He may wish to have the record of his arrest expunged based upon equitable considerations, such as damage to his reputation. In a 2007 case, the First Circuit held that there is no ancillary jurisdiction on such facts. According to the court, none of the recognized reasons for ancillary jurisdiction-noted above-was present in such a case. In so holding, the First Circuit joined the Third, Eighth, and Ninth Circuits in rejecting jurisdiction over expungement proceedings based upon equitable grounds. On the other hand, there is authority in the Second, Fourth, Seventh, Tenth, and District of Columbia Circuits upholding ancillary jurisdiction for expungement based upon equitable grounds.

*Id.,* § 3523.2 at 217–18 (footnotes omitted). In the 2011 supplement, the authors of the treatise make clear that the Sixth Circuit has joined the mentioned circuits in rejecting ancillary jurisdiction over expungement proceeding, and they cite *United States v. Mitchell,* 683 F.Supp.2d 427, 430 (E.D.Va.2010) as conclusively distinguishing the Fourth Circuit decision mentioned in the main volume [3] and for persuasively concluding that ancillary jurisdiction does not give the court authority to expunge a conviction solely upon equitable grounds *Id.,* § 3523.2 at 26 (2011 Supp.).

In *Mitchell* the United States District Court for the Eastern District of Virginia found that the Circuits were split on whether federal courts have the power to expunge criminal records and convictions solely on equitable grounds. *Id.,* at 430–31. The court in *Mitchell* found, however, that many of the decisions upholding the exercise of such ancillary jurisdiction predated the Supreme Court's decision in *Kokkonen.* In *Kokkonen,* the Supreme Court concluded that federal courts were permitted to invoke the doctrine of ancillary jurisdiction only in two limited circumstance: (1) where necessary to permit disposition by a single court of claims that are factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceeding, vindicate its authority, and effectuate its decrees. *Id.,* at 379–80, 114 S.Ct. 1673, as explained in *Mitchell, supra,* at 429.

The defendant in *Mitchell* had been convicted of bank fraud but had been law-abiding for about seven years when he sought expungement. He stood to lose an employment offer with the Architect of the Capitol if his felony conviction were not expunged. *Id.,* at 428. Applying the *Kokkonen* factors, the court first concluded that ancillary jurisdiction was not proper because there was no factual interdependency between the claim over which the district court properly had jurisdiction, namely defendant's criminal conviction, and defendant's later ancillary claim to expungement relief. The facts relating to the defendant's conviction for bank fraud were completely separate and distinct from the equitable circumstances that the defendant claimed justified the expungement of that conviction. *Id.,* at 432–33. Second, expungement of the criminal conviction would not facilitate the functioning of the federal court, i.e., to manage its proceeding, vindicate its authority, and effectuate its decrees. To the contrary, the court found that it was important that a readily accessible record of the defendant's

---

**3.** *Allen v. Webster,* 742 F.2d 153 (4th Cir. 1984), held that it was not an abuse of discretion for the district court to refuse to expunge arrest records maintained by state and federal law enforcement officials, following the defendant's acquittal of drug charges in state court. The defendant was unable to regain federal employment despite his acquittal, but had not exhausted administrative remedies which might have ensured that derogatory information was not considered in connection with his employment application. *Id.,* at 154.

conviction remain a part of the public record. Important public policies are furthered by a presumption in favor of public access to full, complete and truthful court records. *Id.,* at 433 & n. 15. Finally, a conclusion that federal courts have ancillary jurisdiction to expunge criminal convictions for equitable reasons might allow district courts across the country to develop inconsistent equitable standards for ordering expungement, leading to an impairment of the reliability and integrity of federal criminal conviction records. *Id.,* at 433. Accordingly, the court in Mitchell found that federal ancillary jurisdiction was lacking, and the expungement claim was denied.

In applying *Kokkonen* to reach this narrower view of ancillary jurisdiction in expungement cases, Judge Ellis's opinion in *Mitchell* distinguished the Fourth Circuit's *Allen* case, *supra* note 3, on several grounds. *Allen* did not directly address the jurisdictional question, was a case involving administrative exhaustion, and was factually distinguishable, involving a criminal arrest and acquittal record, not a conviction. *Mitchell, supra,* at 430.[4] The court in *Mitchell* also distinguished other decisions—including two of its own—as predating *Kokkonen,* as also involving an acquitted defendant, or as not addressing the jurisdictional issue. The court found support for its jurisdictional holding, however, in other cases, including *United States v. Gary,* 206 F.Supp.2d 741 (D.Md. 2002). *Id.,* at 431 & n. 11.

Two North Carolina cases have followed the reasoning of Mitchell in holding that the power to expunge federal criminal convictions solely on equitable grounds is not authorized by the Constitution or by statute. *Sambou v. United States,* 2010 WL 3363034 (E.D.N.C. Aug. 24, 2010); *Bethel v. United States,* 2010 WL 3063231 (E.D.N.C. Aug. 3, 2010).

Expungement cases from this District have not applied *Kokkonen* in this context, and have not been uniformly explicit about the jurisdictional question. The cases have, however, uniformly rejected requests for expungement. *See, Martin-el v. Maryland,* 2011 WL 5513241 (D.Md. Nov. 9, 2011) (movant was not entitled to an extraordinary writ or to invoke the court's limited authority to expunge, despite the fact that the movant was only 15 at the time of his 1959 conviction under a state juvenile justice statute later found unconstitutional, and despite his inability to find work with the area's larger employers or to secure a passport); *Stoute v. United States,* 2011 WL 2037672 (D.Md. May 24, 2011) (defendant's conviction for possession of cocaine could not be expunged where the conviction had caused no major adverse consequences over a 26–year period); *United States v. Chester,* 2009 WL 943633 (D.Md. Apr. 6, 2009) (movant not entitled to expunge 1987 conviction for conspiracy to possess cocaine with intent to distribute; exceptional or extraordinary circumstances were not present where defendant claimed he needed expungement for employment and educational purposes); *Gary, supra,* (defendant not entitled to expungement despite acquittal, where she sought to enhance her employment opportunities and attain her dream of becoming a police officer); *Steelwright, supra* (defendant not entitled to have a drug paraphernalia conviction expunged where defendant did not allege denial of a security clearance or loss of specific job opportunities); *United States v. Stromick,* 710 F.Supp. 613 (D.Md.1989) (defendant not

**4.** In addition, *Allen* addressed expungement in federal court following an acquittal in state court. It is difficult to see how ancillary jurisdiction—which, by its nature, is incidental to an initial case where federal subject matter jurisdiction is proper—can exist independent of any prior federal action.

entitled to expungement despite a prior order of the court setting aside the conviction pursuant to a later-repealed section of the Youth Corrections Act).

Of these cases, only *Gary* explicitly held that the court lacks ancillary jurisdiction to expunge based solely on equitable considerations such as harm to employment opportunities. *Id.*, at 741. In *Steelwright*, decided the same year, the court found that federal courts, exercising ancillary jurisdiction, have "inherent equitable powers" to order expungement, albeit a "narrow" power to be exercised only in unusual or extreme cases. *Id.*, at 572–73 & nn. 11–12. "Although a nebulous concept", there must be "extreme or exceptional circumstance" presented before a court may impose the equitable remedy of expungement. *Id.*, at 573–74. Later cases quote liberally from both *Gary* and *Steelwright* without resolving the tension between them. *See, Martin-el, supra,* at *2–3; and *Chester, supra,* at *1–2.

Importantly for our purposes, the opinions in *Steelwright* and *Stromick* both stated in *dicta* that equitable relief might be appropriate if a defendant were to show that he had been denied a security clearance or specific job opportunities or he was otherwise materially harmed by the criminal records. While the scenario was hypothetical in those cases, the record presents that factual predicate here. The question thus is posed squarely: Does the law still permit, after *Kokkonen*, this kind of balancing of the equities? Defendant maintains it does, asking the Court to weigh the adverse consequences stemming from his drug conviction against the Government's interest in maintaining a record of Defendant's misdemeanor conviction. Memorandum of Susan Bauer, AFPD, at 2–3.[5]

This Court concludes that, in the absence of any controlling statute that guides expungement application,[6] this kind of purely equitable balancing does not survive *Kokkonen* and its progeny. *See Mitchell* and *Gary, supra.* There is no factual interdependency between the claims here as would justify ancillary jurisdiction. The adjudicative facts underlying the Defendant's drug conviction, over which the Court unquestionably had federal question jurisdiction, are completely separate and distinct from the equitable circumstances that the Defendant claims, eight years later, justify the expungement of that conviction. Second, expungement of the criminal conviction would not facilitate the functioning of this Court, that is, to manage its proceeding, vindicate its authority, and effectuate its decrees. At least in the case of a criminal conviction, it hardly seems the case that an expungement order would serve to vindicate the

---

5. *Steelwright* found authority for this kind of balancing in *Diamond v. United States,* 649 F.2d 496, 498 (7th Cir.1981) ("If the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate"). *Steelwright, supra,* at 574.

6. Commentators have called for federal statutory reform, e.g., Frugan Mouzon, *Forgive Us Our Trespasses: The Need for Federal Expungement Legislation,* 39 U. MEMPHIS L.REV. 1, 35–45 (2008). The article points out the lack of uniformity among the Circuits as to the availability of expungement relief. *Id.,* at 12–13, 29–31. A statutory solution addressing the issue could deal with questions such as what types of criminal records may be expunged, whether certain conviction dispositions may be expunged, who is eligible in view of subsequent law-abiding conduct, waiting and limitation periods, the effect of expungement (e.g., prohibiting the use of expunged records in the employment process; relieving a person from any duty to disclose expunged matters), the special needs of law enforcement, and penalties and sanctions. *Id.,* at 36–45. These are questions which seem more appropriate for legislative judgment than the case-by-case line-drawing involved in the equitable approach to expungement requests.

Court's authority or to effectuate its decree. The two outcomes are contradictory; such an expungement order would undercut the authority of the Court and frustrate, not effectuate, its settled decrees.[7] As determined in *Mitchell*, there is a strong interest in preserving readily accessible public records of criminal convictions and other disposition;; important public policies are furthered by a presumption in favor of open access to complete and truthful court records. Broader access to expungement, under a balancing test or other possibly inconsistent equitable standards for ordering expungement, could jeopardize the reliability and integrity of federal criminal records. This is not in accord with the strong institutional interest of federal courts in managing their proceeding, vindicating their authority, and effectuating their decrees.

### III.

For the foregoing reasons, this Court concludes that federal ancillary jurisdiction is unavailable here. The Defendant's claim for expungement of his misdemeanor conviction relies on purely equitable grounds—the impact of the conviction on his employment opportunities, and the likelihood that an employment-related security clearance will be unavailable. In the absence of acquittal, or even any claim that his conviction was in any way unlawful or unconstitutional, that his arrest or conviction flowed from any sort of official misconduct, or that the statute on which he was convicted has been found unconstitutional, I find that this Court is not empowered to grant the expungement relief sought. The Defendant is to be commended for turning his life around in the near decade since the events that gave rise to his prosecution, but, in a federal system with no generally applicable statutory process for expungement, that is not enough to warrant this extraordinary remedy.

For these reasons, Defendant's motion must be denied. IT IS SO ORDERED.

---

**7.** In the case of an acquitted defendant, on the other hand, expungement may be more consistent with the prior judgment reached by the court, and thus more in accord with the second *Kokkonen* principle. An acquittal after trial, however, does not necessarily impugn the arrest that preceded it. *Gary, supra,* at 741. And, as we have seen, defendants who have been acquitted, or have received a disposition with a close kinship to an acquittal, have frequently been unsuccessful in seeking expungement. *See, Allen, Martin-el, Gary,* and *Stromick.*