**UNITED STATES of America,**

v.

**April S. McKNIGHT, Defendant.**

**Case No. 07–mj–1218–SKG.**

United States District Court,
D. Maryland.

Signed July 11, 2014.

April S. McKnight, Odenton, MD, pro se.

Gina M. Harasti, Gina M. Harasti PC, Severna Park, MD, for Defendant.

## Memorandum Opinion

SUSAN K. GAUVEY, United States Magistrate Judge.

Now pending before the Court is Defendant, April McKnight's motion to expunge her criminal record—an arrest for, and charge of, theft of government property (shoplifting). (ECF No. 10). The government did not oppose the motion for expungement. (ECF No. 13). No hearing is necessary. Local Rule 105.6 (D.Md.2011).

This motion requires consideration of two issues: (1) whether federal ancillary jurisdiction extends to a claim for expungement of an arrest and charge—not on grounds of any illegality—but based solely on equitable considerations and (2) whether such relief is warranted here. Given that the Government does not object to Defendant's motion, the facts of the charge and disposition, and significant policy considerations in favor of her request, the Defendant's motion will be GRANTED.

## I.

On December 20, 2006, Defendant was charged with theft of public property, 18 U.S.C. § 641, for events occurring on the grounds of Fort George G. Meade in Anne Arundel County, Maryland. The Statement of Probable Cause stated that the arresting officer witnessed Defendant, via VHS tape, take a Coach purse off of a display and place it in her shopping cart. Without paying, Defendant left the store, where the arresting officer detained her and subsequently found the purse, DVDs, a PlayStation, and a sweater concealed under her shopping cart.

Defendant consented to trial before a United States Magistrate Judge on April 23, 2007. On July 9, 2007, at the government's request, then-Magistrate Judge James K. Bredar granted a continuance of Defendant's hearing so that she could meet with the United States Probation and Pretrial Services ("Pretrial Services") office to be screened for eligibility for the pretrial diversion program. Defendant was subsequently accepted into a pre-trial diversion program of the Pretrial Services on July 27, 2007. Defendant complied with all terms of the program. Accordingly, on September 10, 2008, the Government moved to dismiss the charges against her. That same day, the undersigned granted the Government's motion.

On July 25, 2013, Defendant wrote a letter to the Court requesting that this case be expunged from her record, which the Court treats as a motion. (ECF No. 10). In response to a letter from the Court requesting additional information, Defendant wrote, on October 4, 2013, that she accepted responsibility for her actions and wanted to continue her life as a productive member of society. (ECF No. 11). Defendant's third letter to the Court, dated October 10, 2013, provided that her arrest "can and will" affect her ability to obtain employment. (ECF No. 12). The Court requested the Government's position on the expungement request and in a November 18, 2013 letter, the Government,

specifically Special Assistant United States Attorney, Erin McCarthy, stated that the Government had no objection to Defendant's request for expungement and "she believed that she will succeed in [her] endeavor [to be a productive member of society and obtain employment], and take full advantage of this second chance." (ECF No. 13).

## II.

■ There is no applicable statute providing for expungement in a case like this. Thus, the only available jurisdictional basis is the doctrine of ancillary jurisdiction. Federal courts are courts of limited jurisdiction, and only possess that power authorized by the Constitution or by statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted). Federal jurisdiction "is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673 (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).

■ Ancillary jurisdiction is a concept that "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378, 114 S.Ct. 1673. In 1990, Congress enacted 28 U.S.C. § 1367,

codifying much of "the common-law doctrine of ancillary jurisdiction as part of supplemental jurisdiction." *Peacock v. Thomas*, 516 U.S. 349, 356, 116 S.Ct. 862, 867 n. 5, 133 L.Ed.2d 817 (1996) (internal quotation marks omitted). However, as both the Fourth Circuit and the leading treatise on federal practice and procedure explain, § 1367 did not codify this entire common-law concept:

> Although § 1367 governs ancillary jurisdiction over *claims* asserted in a case over which the district court has federal subject matter jurisdiction, it does not affect common law ancillary jurisdiction "over related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction," which remains governed by case law.

*Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir.2010) (quoting 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper and Richard D. Freer, *Federal Practice and Procedure* § 3523.2 at 213 (3d ed.2008) (emphasis in original)).

In *Kokkonen*,[1] the Supreme Court concluded that federal courts generally may invoke the doctrine of ancillary jurisdiction in two circumstances: (1) where necessary to permit disposition by a single court of claims that are factually interdependent; and (2) "to enable a court to function successfully, that is, to manage its proceeding, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379–80, 114 S.Ct. 1673.

---

1. Though *Kokkonen* was not decided in the expungement context, it reached the ancillary jurisdiction issue as the petitioner sought to invoke the doctrine as a basis for its federal court action to enforce a settlement agreement resolving a breach of an agency agreement. As the parties had litigated this prior claim before a federal court, the petitioner argued that ancillary jurisdiction was proper.

The Supreme Court disagreed on the basis that "[t]he facts to be determined with regard to such alleged breaches of [the settlement agreement] are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business." 511 U.S. at 381, 114 S.Ct. 1673.

While this decision has not excluded the federal courts from ancillary jurisdiction over all expungement proceedings,[2] it did lead to a pronounced Circuit split over whether jurisdiction exists where the sole basis for the request lies in equity:

One interesting issue is whether a district court that heard a criminal matter may exercise ancillary jurisdiction to entertain proceedings to expunge the criminal record. In limited circumstances, federal law expressly permits expungement, so ancillary jurisdiction is not necessary. When there is no such federal law, however, the courts clearly have ancillary jurisdiction to expunge records of unlawful convictions or arrests.

The courts disagree, however, on whether there is ancillary jurisdiction to entertain a proceeding to expunge based solely upon equitable considerations. For example, suppose a criminal Defendant is acquitted at trial. He may wish to have the record of his arrest expunged based upon equitable considerations, such as damage to his reputation. In a 2007 case, the First Circuit held that there is no ancillary jurisdiction on such facts. According to the court, none of the recognized reasons for ancillary jurisdiction—noted above—was present in such a case. In so holding, the First Circuit joined the Third, Eighth, and Ninth Circuits in rejecting jurisdiction over expungement proceedings based upon equitable grounds. On the other hand, there is authority in the Second, Fourth, Seventh, Tenth, and District of Columbia Circuits upholding ancillary jurisdiction for expungement based upon equitable grounds.

Wright, Miller, Cooper, & Freer, *supra,* § 3523.2 at 217–18 (footnotes omitted). In the 2013 supplement, the authors of the treatise state that the Sixth Circuit has joined the mentioned circuits in rejecting ancillary jurisdiction over expungement proceedings. *Id.* § 3523.2 at 59 (2013 Supp.). Of importance here, this supplement also cites two cases in this Circuit denying motions for expungement of criminal convictions based solely on equitable grounds, *United States v. Harris,* 847 F.Supp.2d 828, 831–35 (D.Md.2012) and *United States v. Mitchell,* 683 F.Supp.2d 427, 430 (E.D.Va.2010), which discuss the' Fourth Circuit decision, *Allen v. Webster,* 742 F.2d 153 (4th Cir.1984). Wright, Miller, Cooper, & Freer, *supra,* § 3523.2 at 59–60 (2013 Supp.).

In *Allen,* a pre-*Kokkonen* decision, the Fourth Circuit held that the district court had "not abuse[d] its equitable discretion" by refusing to expunge the federal and state records of an arrest after the movant had been acquitted of drug charges in state court. *Allen,* F.2d at 155. Though the Defendant contended that he had been unable to obtain federal employment despite his acquittal, he had failed to exhaust administrative remedies that may have prevented his arrest records from being considered by prospective employers. *Id.* at 154.

By so holding, the Fourth Circuit did not foreclose the possibility that a district court may grant expungement based upon its "equitable discretion." *Id.* at 155. However, as noted in Wright and Miller, a pair of district court decisions within the Fourth Circuit, *Harris* and *Mitchell,* have

---

**2.** The Supreme Court has declined to resolve whether authority to expunge exists, and if so, what the standard is for expungement. *See Coloian v. United States,* 552 U.S. 948, 128 S.Ct. 377, 169 L.Ed.2d 260 (2007) (mem.), denying cert. *to* 480 F.3d 47 (1st Cir.2007);

*Rowlands v. United States,* 549 U.S. 1032, 127 S.Ct. 598, 166 L.Ed.2d 431 (2006) (mem.), denying cert. *to* 451 F.3d 173 (3d Cir.2006); *Schnitzer v. United States,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978), denying cert. *to* 567 F.2d 536 (2d Cir.1977).

distinguished the *Allen* case in light of the Supreme Court's *Kokkonen* decision in the intervening time period. Because the Fourth Circuit has not re-visited the issue since *Kokkonen*, the Court is guided by these district court decisions.

The courts in *Harris* and *Mitchell* each applied *Kokkonen* to reach a narrow view of ancillary jurisdiction in expungement cases, finding themselves without jurisdiction to entertain the merits of such motions. However, a third district court decision, *United States v. Steelwright*, 179 F.Supp.2d 567, 571 (D.Md.2002), reached the opposite conclusion, holding that a magistrate judge has jurisdiction pursuant to 18 U.S.C. § 3401 and 28 U.S.C. § 636 to rule on the merits of a Defendant's motion for expungement if the Defendant consented to trial and sentencing before that magistrate judge. The tension between these decisions can be resolved upon an analysis of the facts of each case, and it is squarely within this harmony that the Court finds its jurisdiction.

*Harris* and *Mitchell* each involved motions to expunge criminal convictions. In *Harris*, the Defendant sought to expunge a conviction for possession of a controlled substance. 847 F.Supp.2d at 829. Consequently, the court found that it lacked ancillary jurisdiction because: (1) the adjudicative facts underlying the Defendant's drug conviction were not "interdependent" with the equitable considerations (such as employment implications) raised by the Defendant's expungement request; and (2) "at least in the case of a criminal conviction, it hardly seems the case the an expungement order would serve to vindicate the Court's authority or to effectuate its decree." *Id.* at 835. The court in *Mitchell* reached the same conclusion, finding that the Defendant's conviction for bank fraud was entirely unrelated to the asserted equitable considerations for expungement and that expungement of a criminal conviction actually runs contrary to a federal court's ability to vindicate its authority and effectuate its decrees. 683 F.Supp.2d at 432–33.

Here, in contrast, Defendant seeks expungement of an arrest record following dismissal of all counts associated with this case. While the Court agrees that the first *Kokkonen* consideration—whether there is factual interdependency—is certainly missing, the second consideration heavily relied upon in *Harris* and *Mitchell*—that expungement of a criminal **conviction** runs counter to the court's ability to facilitate and manage its proceedings, vindicate its authority, and effectuate its decrees—does not preclude the Court's exercise of ancillary jurisdiction here. Rather, as noted in *Steelwright*, expungement of an arrest record is more akin to, for example, modification or revocation of supervised release. *See* 179 F.Supp.2d at 572; *also cf. Harris*, 847 F.Supp.2d at 835 n. 7 ("In the case of an acquitted Defendant ... expungement may be more consistent with the prior judgment reached by the court, and thus more in accord with the second *Kokkonen* principle."). Accordingly, the Court finds that the exercise of ancillary jurisdiction in the circumstances of this case falls within the second circumstance identified in *Kokkonen*. The authority to order expungement here is a logical and not unlawful extension of the court's authority to manage its proceedings, vindicate its authority, and (in particular) effectuate its decrees.[3]

---

3. The undersigned also acknowledges that where, as here, a defendant in a misdemeanor case consents to be tried before a magistrate judge and expressly and specifically waives trial, judgment, and sentencing by a district judge, that magistrate judge has the authority to hear and decide a subsequent request for expungement arising from the prior misde-

## III.

Because the Court finds ancillary jurisdiction to consider the expungement motion is present, the next question is whether grounds for expungement exist. After balancing the equities between Defendant, and the Government and Society, the Court answers that question in the affirmative.[4]

Ordinarily, federal records of valid arrests, indictments, or convictions may not be expunged. *See, e.g., United States v. Schnitzer,* 567 F.2d 536, 540 (2d Cir. 1977). No federal statute generally authorizes expungement of a federal offense. Thus, in the absence of broad statutory authority, federal courts may only grant expungement in two circumstances: (1) the few instances where a federal statute expressly permits expungement, *see e.g.,* 18 U.S.C. § 3607(c) (providing for expungement for certain first-time drug offenders under the age of twenty-one at the

time of their arrest); and (2) where the court determines that **"extreme or exceptional circumstances"** warrant the exercise of its equitable power to order this type of relief, *Allen,* 742 F.2d at 155 (quoting *Schnitzer,* 567 F.2d at 539); *see Livingston v. United States Department of Justice,* 759 F.2d 74, 78 (D.C.Cir.1985) ("[C]ourts have the inherent, equitable power to expunge arrest records.").

The Fourth Circuit has stated that "expunction is an equitable remedy to be granted in the balancing of the interests of the Defendant[ ] and the state." *Woodall v. Pettibone,* 465 F.2d 49, 52 (4th Cir.1972).[5] *Cf. Steelwright,* 179 F.Supp.2d at 574 ("If the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate.") (quoting *Diamond v. United States,* 649 F.2d 496, 498 (7th Cir.1981)).[6] Courts sitting in equity must "mold each

---

meanor case. *Harris,* 847 F.Supp.2d at 829 n. 1 (citing *Steelwright,* 179 F.Supp.2d at 569–72). Here, this case, including the government's prior motion to dismiss, was and is before the undersigned upon the consent of Defendant.

**4.** No district court within the Fourth Circuit has yet decided whether expungement is warranted where the defendant has successfully completed a pre-trial diversion program and the Government has expressly supported the motion for expungement. No decision has reconciled *Kokkonen's* second principle with a disposition bearing close kinship to an acquittal. Absent authoritative Fourth Circuit precedent, courts in this District have: (i) found themselves lacking ancillary jurisdiction under *Kokkonen* in *Harris,* 847 F.Supp.2d at 831–35 and *Mitchell,* 683 F.Supp.2d at 430, (ii) have not engaged in a balancing of interests, *United States v. Harris,* No. DKC 96–0062, 2012 WL 1144985, at *2 (D.Md. Apr. 3, 2012), (iii) dealt with a conviction in *Martin-el v. Maryland,* No. JFM–11–3044, 2011 WL 5513241, at *1 (D.Md. Nov. 9, 2011), *Stoute v. United States,* No. RDB–11–1220, 2011 WL 2037672, *1 (D.Md. May 24, 2011) and *United*

*States v. Chester,* No. L–87–0507, 2009 WL 943633, at *1 (D.Md. Apr. 6, 2009), or (iv) found themselves lacking inherent equitable power in *Gary v. United States,* No. WDQ–13–3132, 2013 WL 5977998, at *1 (D.Md. Nov. 1, 2013) and *United States v. Gary,* 206 F.Supp.2d 741, 741 (D.Md.2002).

**5.** Expungement and expunction are two variations on the verb "expunge" to convey such action as a noun. Accordingly, these terms will be used interchangeably. *See Steelwright,* 179 F.Supp.2d at 570 n. 4.

**6.** *Harris* held that this type of "purely equitable balancing does not survive *Kokkonen* and its progeny." *Harris,* 847 F.Supp.2d at 834. However, as this Court finds that its ancillary jurisdiction over this motion is consistent with the second *Kokkonen* principle, it is unpersuaded that this holding should foreclose such balancing on the facts of the present case. As these cases either pre-date *Kokkonen* or fail to apply *Kokkonen* in the expungement context, the opinions are neither binding or persuasive authority with regard to the Fourth Circuit's expungement standard.

decree to the necessities of the particular case," stressing "[f]lexibility rather than rigidity," while retaining "[t]he qualities of mercy and practicality [that] have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs." *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944). However, as stated above, courts are not to routinely invoke their equitable power of expunction, but rather, reserve their equitable authority for "extreme or exceptional circumstances." *Allen,* 742 F.2d at 155 (quoting *Schnitzer,* 567 F.2d at 539); *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.1975). Although a nebulous concept, many courts (including those in this district) have found that such equitable circumstances most clearly exist in cases where the underlying arrest or conviction was unlawful and/or unconstitutional, government misconduct is alleged, or the statute on which the arrest was based is subsequently found unconstitutional. *Allen,* 742 F.2d at 155; *Schnitzer,* 567 F.2d at 539; *U.S. v. McLeod,* 385 F.2d 734 (5th Cir.1967). Yet, other authority, including authority in this district, indicates that extreme or exceptional circumstances may exist where a Defendant has, for example, been denied a security clearance, specific job opportunities, or has otherwise been materially harmed by the presence of criminal records.[7] *Steelwright,* 179 F.Supp.2d at 574 (quoting *Stromick,* 710 F.Supp. 613, 614–15 (D.Md. 1989)); *Harris,* 847 F.Supp.2d at 834.

Here, the Special Assistant United States Attorney appearing in this case does not object to Defendant's motion. In fact, the Special Assistant U.S. Attorney submitted the government's position to this Court, wherein she acknowledged Defendant's position that expungement will remove an obstacle to employment. Moreover, the submission commented on Defendant's character, stating that she will "take full advantage of this second chance." (ECF No. 13) Other courts have considered the government's positions when deciding motions for expungement. *See United States v. Van Wagner,* 746 F.Supp. 619, 623 n. 6 (E.D.Va.1990); *United States v. Cook,* 480 F.Supp. 262, 263 (S.D.Tex. 1979). For example, in *United States v. Williams,* the United States District Court for the District of Utah expunged a twenty-year-old drug conviction, noting the Government's concession that the harm to the Defendant's career "far outweigh[ed] the government's interest in maintaining a record of his long past conviction." 582 F.Supp.2d 1345, 1348 (D.Utah 2008). In *United States v. Bohr,* the United States District Court for the Eastern District of Wisconsin ordered expungement of the Defendant's indictment and arrest records, noting that his case was dismissed prior to reaching the trial stage and, "more importantly, the United States Attorney apparently agrees with Defendant [ ] that the Government's interest in law enforcement does not justify retention of these records." 406 F.Supp. 1218, 1219 (E.D.Wis.

---

7. This issue was squarely presented before Magistrate Judge Victor H. Laws, III in *Harris,* as the court held a hearing on the defendant's motion to expunge for the sole purpose of determining "the nature and extent of the impact of the Defendant's drug **conviction** on his job opportunities." *Harris,* 847 F.Supp.2d at 830 (emphasis added). The court found that the conviction presented a "significant impediment" to his ability to obtain the security clearance required for his job

with a government contractor. *Id.* Accordingly, Judge Laws determined that the defendant's conviction record negatively impacted his "career prospects." *Id.* Despite this finding, the court found itself unable to balance the equities in light of *Kokkonen.* However, *Kokkonen* does not present a bar to jurisdiction based on the facts of this case and the Fourth Circuit's adoption of equitable balancing in *Woodall,* 465 F.2d at 52, controls the analysis.

1976). The present case is identical to *Bohr* in this respect. Moreover, *Bohr* has since been cited as an illustrative example of an "extreme" or "exceptional" circumstance where the court was authorized to award expunction. *See, e.g., Sealed Appellant v. Sealed Appellee,* 130 F.3d 695 (5th Cir.1997) ("motion unopposed by U.S. Attorney") (citing *U.S. v. Bohr,* 406 F.Supp. at 1219–20); *also, e.g., Study v. U.S.,* No. MCR–08–0493, 2010 WL 1257655, at \*12 (N.D.Fla. Mar. 4, 2010) ("United States did not oppose the motion or assert law enforcement need to keep records") (citing *Bohr,* 406 F.Supp. at 1218).

Turning to the interests of Defendant, the negative consequences of a criminal record on a person's employability are demonstrable. Over one-half of *all* employers conduct criminal background checks that can operate as a complete bar to ex-offender employment.[8] And it appears that even a greater percentage of larger employers perform background checks on some or all job candidates. *See Background Checking: Conducting Criminal Background Checks,* Society of Human Res. Mgmt., at \*3 (Jan. 22, 2010) (92% of the employer members of the Society of Resources Management—which were mostly large employers—performed criminal background checks). These criminal background checks identify arrests as well as convictions. Harry J. Holzer, Steven Raphael & Michael A. Stoll, *Perceived Criminality, Criminal Background Checks, and the Racial Hiring Practices of Employers,* 49 J.L. & Econ. 451, 454 (2006). The Holzer survey revealed that more than 60% of employers were not willing to consider individuals with a criminal record. *Id.* at 453. Consistent with the Holzer survey, a 2010 Society for Human Resource Management survey of its members revealed that over 31% consider an arrest that did not lead to a conviction as "somewhat" or "very influential" in the employer's decision not to hire.[9] Only 37% of members responding to the same survey said that an arrest record that did not lead to a conviction was "not at all influential."[10] A survey by the National Employment Law Project found that major corporations frequently use blanket no-hire policies for anyone with a felony or a misdemeanor conviction.[11] In a *Wall Street Journal* poll, 66% of respondents said an employer should be allowed to reject all applicants with criminal records, 9% said an employer should not, and 24% said it depended on the job.[12]

---

8. *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions,* EEOC, 6 n. 52 (April 25, 2012) [hereinafter EEOC], http://www.eeoc.gov/laws/guidance/upload/arrest_conviction.pdf (citing Soc'y for Human Res. Mgmt., *Background Checking: Conducting Criminal Background Checks,* slide 3 (Jan. 22, 2010), http://www.slideshare.net/shrm/background-check-criminal?from=share_email); *see also* Michelle Natividad Rodriguez & Maurice Emsellem, Nat'l Emp't Law Project, *65 Million "Need Not Apply": The Case for Reforming Criminal Background Checks for Employment 1* (2011), *available at* http://www.nelp.org/page/-/SCLP/2011/65_Million_Need_Not_Apply.pdf?nocdn=1 (stating that about one in four adults have a criminal background).

9. *Background Checking: Conducting Criminal Background Checks,* Society for Human Res. Mgmt. (January 21, 2010), Http://www.shrm.org/Research /SurveyFindings/Articles/Pages/BackgroundCheckCriminalChecks.Aspx.

10. *Id.*

11. Michelle N. Rodriguez & Maurice Emsellem, *65 Million 'Need Not Apply': The Case for Reforming Criminal Background Checks for Employment,* New York: National Employment Law Project (2011).

12. *Question of the Day,* The Wall Street Journal (June 11, 2013), Http://online.wsj.com/community/groups/question-day-229/topics/should-employer-allowed-reject-all. (last visited July 10, 2014).

Employment rejection based on arrests occurs despite the Equal Employment Opportunity Commission's guidelines under Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e *et seq.*),[13] which provide that arrest records may not be used as the sole justification for denying employment. EEOC, *supra* n. 8, at 12. Such blanket "no hire" policies persist even though no research has shown a link between ex-offenders and workplace violence[14] or theft.[15] "For many employers, the bar on hiring anyone with a criminal record includes applicants whose records consist of only an *arrest*, not a conviction: a group that constitutes one-third of all felony arrests." Kimani Paul–Emile, *Beyond Title VII: Rethinking Race, Ex–Offender Status and Employment Discrimination in the Information Age,* —— VA. L.Rev. ——, 5 (forthcoming 2014) (emphasis added) (citing T.H. Cohen, et al., *Felony Defendants in Large Urban Counties,* U.S. Bureau of Justice Statistics (2004)).

Consideration of arrest records in the hiring context would appear dubious at best. In fact, the Supreme Court has counseled that "the mere fact that a [person] has been arrested has very little, if any probative value in showing that [he or she] has engaged in any misconduct." *Schware v. Bd. of Bar Exam'rs,* 353 U.S. 232, 241, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *see also Gregory v. Litton Sys., Inc.,* 316 F.Supp. 401, 403 (C.D.Cal.1970) ("[I]nformation concerning a prospective employee's record of arrests without convictions, is irrelevant to [an individual's] suitability or qualification for employment."), *modified on other grounds,* 472 F.2d 631 (9th Cir.1972).

Employment rejections due to a criminal record not only have detrimental effects on the individuals involved, but have detrimental effects on society. Lack of employment has been correlated to increased recidivism. A Federal Bureau of Prisons study found that ex-offenders who obtain post-release employment had a three-year recidivism rate of 27.6% compared to

**13.** While earlier decisions accorded significant weight to the EEOC guidelines, *e.g., Griggs v. Duke Power,* 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court recently stated that "[s]uch interpretations are 'entitled to respect under [the Court's] decision in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the power to persuade.' " *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 n. 6, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quoting *Christensen v. Harris Cnty.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)). *See also Vance v. Ball State Univ.,* —— U.S. ——, 133 S.Ct. 2434, 2461, 186 L.Ed.2d 565 (2013) (EEOC guidelines merited *Skidmore* deference). In response to a Third Circuit Court of Appeals decision, the EEOC recently updated its guidelines. *See El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 243–44 (3d Cir.2007) (finding that the EEOC's guidelines were silent in several important areas). Courts have yet to explore the appropriate level of deference that

should be accorded to these updated guidelines, but this Court finds the EEOC's revised approach particularly persuasive as the guidelines now "incorporate[ ] social science and criminological research, court decisions, and information about various state and federal laws." *Questions and Answers About the EEOC's Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII,* U.S. Equal Employment Opportunity Commission, http://www.eeoc.gov/laws/guidance/qa_arrest_conviction.cfm (last visited Mar. 4, 2014).

**14.** Kristen A. Williams, Comment, *Employing Ex–Offenders: Shifting the Evaluation of Workplace Risks and Opportunities from Employers to Corrections,* 55 UCLA L.Rev. 521, 534 (2007).

**15.** Ronet Bachman, *Violence and Theft in the Workplace,* Bureau of Justice Statistics, 1 (July 1994), http://www.bjs.gov/content/pub/pdf/thefwork.pdf.

53.9% of those who did not find work.[16] The negative correlation between employment and recidivism rates of ex-offenders combined with the expense of the corrections system convinces the Court that the removal of an impediment to ex-offender employment, in actuality, favors both Defendant and the Government. *See* Fruqan Mouzon, *Forgive Us Our Trespasses: The Need for Federal Expungement Legislation,* 39 U. Memphis L.Rev. 1, 8 (2008) ("In the years between 1982 and 2005, taxpayer spending for corrections increased from $9 billion to over $65 billion, marking a spending increase of more than 700%.").

Maryland state law is also informative as to the community's view as to the circumstances that justify expungement. Notably under Maryland law, the Defendant would be eligible to seek expungement. MD Code Ann., Crim. Proc. § 10–105(a)(2) provides that persons charged with commission of a crime may seek expungement if the charge has been dismissed. (West 2014). Moreover, Maryland is trending toward further protection of those with criminal records. In 2013, Maryland's General Assembly enacted a law that bans State employers from inquiring into an applicant's criminal history until the applicant has been provided an opportunity for an interview. MD Code Ann., State Pers. & Pens. § 2–203 (West 2014). These laws are a legislative expression that "the dangers of unwarranted adverse consequences to the individual [of a dismissed charge] outweigh the public interest in the maintenance of the records." *See Steelwright,* 179 F.Supp.2d at 574.

Having balanced the interests of Defendant, the Government and society, the Court finds that extreme or exceptional circumstances exist such that Defendant is entitled to expungement of her arrest record and charge. First, this case is exceptional in that the Government supports Defendant's request, acknowledging her interest in rehabilitation and the effect of an arrest on her future employment prospects. *See Bohr,* 406 F.Supp. at 1219. The Court could not find any case where expungement was denied where the state acquiesced in the request. While the position of a particular prosecutor may not wholly control the expungement decision, it obviously should be given considerable weight as the prosecutor represents the most knowledgeable source as to the State's interests in any case.

Second, Defendant participated in and complied with a pre-trial diversion program, and subsequently, the charge associated with this case was dismissed. Moreover, five years elapsed between Defendant's arrest and her request for expungement, with no indication of any unlawful behavior in that period. Having considered Defendant's own unique employment concerns, research on the detrimental effect of a criminal record on employment prospects and policies evolving to alleviate the obstacles faced by those with criminal records, the Court views these considerations as also weighing in favor of expunction.

Third, no interest seems to be served in denying the request for expungement here. The Government admitted the Defendant into its pretrial diversion program. The Defendant successfully completed the

---

**16.** Miles D. Harer, Fed. Bureau of Prisons Office of Res. & Evaluation, *Recidivism Among Federal Prisoners Released in 1987,* 4–5 (1994), http://www.bop.gov/resources/research_projects/published_reports/ recidivism/oreprrecid87.pdf. *See also* Silva, *supra,* at 161 (describing this study as the "last formal recidivism study" of federal prisoners).

pretrial diversion requirements. The Government moved for the dismissal of the case which the Court granted. This approach for a first time defendant in a minor charge benefits the court in management of its docket and is consistent with this Court's dismissal of the charge, benefits the prosecutor in management of resources and prioritization of his or her case load, and benefits society in removing irrational (and illegal) barriers to employment. Finally and critically, the Government did not oppose the expungement on any grounds, including a law enforcement purpose. While there might be some theoretical value in a complete criminal history (for example, if in the future Defendant is charged with another offense), the Government did not articulate one here, and any theoretical value must be weighed against the demonstrated employment disadvantage of an arrest record.

Accordingly, for the foregoing reasons, Defendant's Motion to Expunge is hereby GRANTED. The Clerk of the Court is directed to expunge the arrest and charge in 07–mj–1218–SKG from the public record.

